**John F. ENGLISH et al., Appellants,**

v.

**John CUNNINGHAM et al., Appellees.**

No. 14983.

United States Court of Appeals District of Columbia Circuit.

Argued April 15, 1959.

Decided June 10, 1959.

Supplemental Opinion July 9, 1959.

Motion for Reconsideration Denied July 15, 1959.

Wilbur K. Miller, Circuit Judge, dissented in part.

Mr. Edward Bennett Williams, Washington, D. C., for appellants. Mr. Raymond W. Bergan, Washington, D. C., also entered an appearance for appellants.

Mr. Godfrey P. Schmidt, New York City, for appellees.

Mr. Martin F. O'Donoghue, Washington, D. C., for Board of Monitors.

Mr. Raymond R. Dickey, Washington, D. C., filed a brief on behalf of Anthony Distinti, Robert J. Coar and William E. McKernan, as amici curiae, urging reversal.

Before EDGERTON, WILBUR K. MILLER, and FAHY, Circuit Judges.

FAHY, Circuit Judge.

This is an appeal by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, herein referred to usually as the Teamsters, and by certain of their officers, usually referred to, with the Teamsters, as defendants. The litigation was initiated by thirteen members of locals of the Teamsters, to whom we shall usually refer as plaintiffs.[1] They sued for themselves and on behalf of all other members.

The thrust of plaintiffs' original action, filed in September 1957, was that under the 1952 constitution of the Teamsters [2] plaintiffs had certain legal rights and defendants certain legal obligations, and the rights were being denied and the obligations were being repudiated by defendants. The complaint alleged, *inter alia,* a conspiracy to "rig" the election or selection of delegates to a forthcoming national convention of the Teamsters to be held in Miami in September–October 1957, numerous violations of the constitution, including the misuse of union funds, the domination and disfranchisement of members, and the imposition of officers and leaders to prevent free elections and to bring about the election of defendant James R. Hoffa as General President and of defendant Dave Beck as General President Emeritus. Other allegations include charges of raids on union treasuries, refusal of financial accounting, the keeping of inadequate financial records, and the engaging by officers in private business with union funds.

The complaint prayed the court to enjoin defendants from conducting the Miami convention or the election of any national officer unless those voting were properly elected or selected in accordance with the constitution, to enjoin violation by defendants of the constitution, and to

---

1. John Cunningham, one of the thirteen, is no longer entirely sympathetic with the positions of the other plaintiffs, but as a matter of convenience we refer to the plaintiffs as a group. The companion case of Cunningham v. English, 106 U.S.

App.D.C. ——, 269 F.2d 539, is an appeal by him alone.

2. Unless otherwise indicated the word "constitution" means the constitution of the Teamsters.

appoint "a receiver or board of receivers, a master in equity or masters in equity," who would be authorized to establish pursuant to the constitution sound procedures for elections by the members of local unions, to do these and kindred things expeditiously, and then to return the management of the affairs of the Teamsters to their General Officers duly elected "at such National Convention convened pursuant to the Order of this Court," and for other relief which need not now be specified.

The District Court, Judge Letts sitting, entered a preliminary injunction enjoining the holding of the Miami convention. This court stayed the injunction,[3] deeming it to go beyond the necessities of the situation and not required to prevent irreparable injury to plaintiffs. Our stay was without prejudice, however, to such relief as might properly be grantable after the election, and we provided that "all delegates recognized or seated by the credentials committee shall be selected in accordance with the requirements of the constitution.  *  * "

The convention was held, new officers were elected, and a new constitution adopted, amending the 1952 constitution. Plaintiffs then amended their complaint to attack the proceedings at the convention, seeking to stay the effectuation of any of its acts. Another preliminary injunction was issued, this time, *inter alia,* enjoining James R. Hoffa, who had been elected at the convention as General President of the Teamsters, and others there elected to office in the Teamsters, from taking office, from applying any decision, practice, usage or policy and expending any monies of the Teamsters' funds in violation of the 1952 constitution. This court modified but did not stay this injunction.[4]

The case then went to trial before Judge Letts. After some three weeks of trial a consent decree was entered, January 31, 1958, and the preliminary injunction last referred to was dissolved. A copy of the body of the consent decree is set forth as Appendix A to this opinion.[5]

On February 9, 1959, the consent decree was construed and modified, but without the consent of the defendants. It is from this decree, a copy of which is set forth as Appendix B to this opinion, that the instant appeal is taken. We stayed this decree to enable its validity to be determined prior to the necessity of compliance.[6] Judge Miller dissented from our stay order.

1. *The Consent Decree.* We consider first the validity of the consent decree, because it is the foundation of the decree of February 9. Except as we shall specify with respect to paragraph 14 we hold the consent decree to be valid. It responds to justiciable issues which were being tried, involving the rights of members and the duties of officers of a labor organization under its constitution. The plan consented to for the solution of the issues was within the competence of the court to approve, and neither defendants nor plaintiffs urge the contrary.[7]

---

3. Chief Justice Warren, Circuit Justice, on October 1, 1957, declined to grant relief from our stay order.

4. That portion of the District Court's injunction which restrained the Teamsters from applying any decision, practice, usage or policy in violation of the 1952 constitution or expending Teamsters' funds in violation thereof was vacated and we substituted therefor a provision that the affairs of the Teamsters would be governed by the 1952 constitution and no amendments adopted at the convention would be put in effect during the pendency of the injunction.

5. It is entitled Consent Order, but for convenience and uniformity with other terminology we shall refer to it as the consent decree.

6. At the same time we expedited the hearing of the appeal.

7. In the companion case, see note 1, supra, we consider separately the particular question raised by one of the original plaintiffs against the validity of the consent decree under Rule 23 Fed. R.Civ.P., 28 U.S.C.A. The Monitors also at one stage of the litigation seem to have entertained doubts due to noncompliance with this Rule, but they do not now press them.

In upholding the consent decree we refer particularly at this point to the creation of a Board of Monitors to assist the court and the parties in carrying out the decree.[8] This was responsive to the nature of the case and to the prayers of the complaint. As previously noted plaintiffs asked for masters in equity, but both court and parties preferred the court appointees to be called Monitors. No untoward legal significance attaches to the designation; and the court could use a board of this character to assist in bringing the litigation to a solution consistently with the rights and duties of the parties. The court thus exercised its powers to cope with a complicated situation affecting 1,500,000 union members. The latitude available to a court of equity in adapting its relief to the exigencies of a case is broad. Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 552, 57 S.Ct. 592, 81 L.Ed. 789; and see Green v. Obergfell, 73 App.D.C. 298, 307, 121 F.2d 46, 55, 138 A.L.R. 258, certiorari denied 314 U.S. 637, 62 S.Ct. 72, 86 L.Ed. 511; Alexander v. Hillman, 296 U.S. 222, 239, 56 S.Ct. 204, 80 L.Ed. 192; Union Pacific R. Co. v. Chicago, Milwaukee & St. Paul R. Co., 163 U.S. 564, 600–601, 16 S.Ct. 1173, 41 L.Ed. 265; Ball v. Victor Adding Machine Co., 5 Cir., 1956, 236 F.2d 170, 174–175; Bowen v. Hockley, 4 Cir., 1934, 71 F.2d 781, 786, 94 A.L.R. 856; Pomeroy's Equity Jurisprudence, §§ 60, 109, 111 (5th Ed. 1941). The validity of specific authority conferred upon or exercised by the Monitors pursuant to the consent decree we consider later in this opinion.[9]

We refer now also to paragraph 14 of the consent decree, under which the defendants are required to pay the fees of counsel for plaintiffs and the expenses incurred in the prosecution of the action, both as determined by the District Court.

There can be no question we think as to the validity of the provision with respect to expenses, including compensation to the Monitors. As to the provision with respect to fees of counsel, we deal with this in our decision of this day in the companion case of Cunningham v. English.

2. *Events intervening between the consent decree of January 31, 1958, and the decree of February 9, 1959.* The Monitors came into being as a Board on February 4, 1958, with Honorable Nathan Cayton as Chairman. Mr. Hoffa and other General Officers elected at the Miami convention took office provisionally, subject to the terms of the consent decree. In a letter to Judge Letts on May 13, 1958, Chairman Cayton stated that the Monitors had functioned well and successfully in furthering the objectives of the decree, with the "enlightened cooperation" of the International Union.[10] Judge Cayton resigned and was succeeded by Martin F. O'Donoghue, Esquire, as Chairman of the Board of Monitors. Disagreements thereafter arose. One cause may be traced to a change by the Monitors in their methods of operation, including the issuance of written "Orders of Recommendation." While many of these were complied with, the defendants disputed others on various grounds. Ensuing controversies led the Monitors on September 17, 1958, to file with the District Court a petition for the construction, reformation and/or modification of the consent decree, and for other relief. They alleged that their "status and authority" had been questioned by the defendants "on the basis that the powers of the Monitors are merely advisory and recommendatory." They alleged failure of full compliance with several of their Orders of Recommendation and said the Teamsters' General Ex-

---

8. We speak of the Monitors or the Board of Monitors as acting when often a majority did so. In some important respects Mr. Wells, the Monitor nominated by the Teamsters, did not join in their action.

9. We interpolate that the Monitors are not parties to this appeal. We have, however, considered the briefs they have filed with us.

10. Judge Cayton's letter was attached as Exhibit 1, p. 43, to the Initial Report of the Board of Monitors.

ecutive Board had violated the consent decree in several respects. They pointed out that the provisions of the decree regarding the holding of a new convention and election were basic objectives, to the end that de jure officers might be elected. They further alleged that notwithstanding conditions were not ripe for a new convention and election they were advised a convention was proposed for February 1959. They also alleged that Price Waterhouse & Company [11] had reported that it was essential to good auditing that better record keeping be established in the International office. The Monitors then stated that the proposed convention should be held only after modern auditing and reporting procedures had been established, to insure a truly democratic expression of the views of the membership. On September 30, 1958, Godfrey P. Schmidt, Esquire,[12] on behalf of plaintiffs filed a petition along the same general lines.

A hearing on the petitions was held by Judge Letts in November 1958. The court found bad faith on the part of defendants in not fully carrying out the consent decree, and entered the decree of February 9, 1959. The defendants dispute the findings of bad faith, claiming good faith differences of opinion about both the methods and powers of the Monitors, as well as the unsoundness of some of the Orders of Recommendation on constitutional and other grounds.

We think it unnecessary to resolve the question of bad faith or to pass upon the accuracy of the 129 findings of fact, some quite lengthy, submitted by the Monitors and adopted without change by the court. Otherwise we would be obliged to analyze and pass judgment upon each disputed charge and finding. We are able to determine the issues on appeal upon considerations other than the issue of bad faith, and aside from the accuracy of all but a few of the findings.

3. *The powers of the Monitors.* Defendants urge that the decree of February 9, 1959, invalidly transforms the powers of the Monitors from those of an advisory, consultative, and recommendatory character to those of command. Yet both the plaintiffs and the Monitors concede that the Monitors cannot command.[13] This tends to dispel whatever misunderstanding may have existed, due in part no doubt to the method by which the Monitors functioned and spoke at times. That they do not have the power to command, as they and the plaintiffs now concede, is clear from the terms of the consent decree, Appendix A. But it is equally clear that that decree imposes definite obligations upon the defendants. We summarize these obligations in Appendix C, and we also set out in summary form in Appendix D the functions of the Monitors under the terms of the consent decree. The Monitors may make recommendations to the defendants in areas where the defendants have substantive obligations under the consent decree. These recommendations may be in writing if desired. Preferably they should be issued only after consultation and accompanied with efforts to obtain compliance.[14] If the Monitors are advised that

---

11. In April 1958, the Monitors, recognizing their need of competent professional advice with respect to review and recommendation for establishment of proper accounting and financial methods of control as provided in the consent decree, see Appendix A, paragraph 5, engaged the accounting firm of Price Waterhouse & Co. to make a preliminary survey of Teamster financial procedures and to advise the Monitors as to necessary changes.

12. Mr. Schmidt is one of the Monitors and one of the attorneys for plaintiffs.

13. Thus, plaintiffs state to this court that the Monitors "never claimed or exercised 'mandatory' powers, at all times they knew they were possessed of only *advisory* or recommendatory powers." And the Monitors tell us in their brief that they are "only an advisory and reporting body."

14. Since the only valid "orders" are those of the court, the terminology "Orders of Recommendation" used by the Monitors should be abandoned. While this has more to do with method than with

defendants fail to comply in any significant respect with their obligations under the consent decree, the Monitors may so report to the court. They are required to report at least semi-annually and of course may do so oftener, for this duty is not to be construed narrowly. The court itself, after due opportunity for defendants to be heard, may issue orders within the scope of the consent decree, validly modified as hereinafter explained. We emphasize that action of the court must rest upon its decrees, not upon the Monitors' recommendations as such, and is to be embodied in an order of the court, not conveyed by reference to a separate instrument.[15]

**4.** *Validity of the decree of February 9, 1959.* As to this decree the principal question is whether it is valid at all. Though founded on the consent decree, it was not itself consented to. In appropriate circumstances a court may modify a consent decree without the consent of the parties. This is not contested here. The applicable principles are set forth by the Supreme Court in United States v. Swift & Co., 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999, where it is said,

"The distinction is betwen restraints that give protection to rights fully accrued upon facts so nearly permanent as to be substantially impervious to change, and those that involve the supervision of changing conduct or conditions and are thus provisional and tentative * * *. The result is all one whether the decree has been entered after litigation or by consent * * *. In either event, a court does not abdicate its powers to revoke or modify its mandate if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong * * *. The consent is to be read as directed toward events as they then were. It was not an abandonment of the right to exact revision in the future, if revision should become necessary in adaptation to events to be."

286 U.S. at pages 114–115, 52 S.Ct. at page 462. See, also, Coca-Cola Co. v. Standard Bottling Co., 10 Cir., 1943, 138 F.2d 788.

Defendants read these principles to prevent modification of this consent decree. In this we think they are mistaken. As they say, the plaintiffs attacked the legality of the 1957 elections, and sought a declaration of their invalidity and the calling of new elections under judicial supervision. But it does not follow, as defendants contend, that the members' right to constitutional elections was "fully accrued," except in the very abstract sense that the right existed. The ability to attain it did not. Nor were the facts upon which the case turned "nearly permanent" and "substantially impervious to change." The consent decree clearly contemplated change which would lead toward new and valid elections. If this basic goal of the parties could not be reached in the time originally contemplated, an extension of time could validly be made by the court under the Swift principles. There was here "the supervision of changing conduct or conditions * * *." 286 U.S. at page 114, 52 S.Ct. at page 462.

It is important to remember that defendant Hoffa and other General Officers of the Teamsters have been held in office under the consent decree. Though this has been provisional, they have been permitted to be and to remain in general charge of the affairs of the Teamsters. This concession to defendants was counterbalanced in the consent decree by their acceptance of obligations to bring about a situation in which new elections of a de

substance, it is obvious that the method by which the Monitors function is important.

15. An illustration of the necessity for this —but not the only justification therefor—

is that recommendations of the Monitors, judging by experience, often called for action within certain time schedules impossible to meet when the court approved the recommendation.

jure and non-provisional character could be held, consistently with the legal rights of plaintiffs and those for whom they act. We realize the desirability of early transition from court supervision to normal organizational management, but the District Court is not required by law, or by the consent decree, to step aside until conditions advance to a point which gives reasonable assurance of new elections in accord with membership rights under the Teamsters' constitution. If defendants' obligations are not yet fulfilled we think the time for doing so may be enlarged.[16]

Thus far we hold (1) the consent decree is valid, (2) it gives the Monitors no mandatory power, (3) except as to drafting of proposed by-laws their powers are recommendatory, consultative, and advisory, but (4) they are authorized to report from time to time to the court with respect to compliance with the consent decree itself, and (5) the consent decree is not immune from modification with respect to the time for bringing about compliance with its primary obligations.

5. *Further consideration of the decree of February 9, 1959.* We consider now, insofar as necessary, other details of the decree of February 9, first those related directly to a new convention, namely, paragraphs 3, 4 and 5.

■ *Paragraph 3.* In providing that the time for the convention shall be subject to recommendation by the Board of Monitors to the General Executive Board of the Teamsters, the exact time being subject to final approval of the court, paragraph 3 subjects the court's determination of the time to the initiative of the Monitors. This much is error. The court must retain control, though the Monitors, as well as the defendants and the plaintiffs, may recommend. The decision is that of the court, subject, as set forth in paragraph 8 of the consent decree, to the provision that in all events the convention must be called and held within the time specified in the constitution.

*Paragraph 4.* The District Court here ruled that the convention call for September 16, 1958, was null and void. This is now moot and is set aside for that reason. *Paragraph 5,* which refers to March 15–19, 1959, is in the same category. Defendants have consented to postponement of the convention during the pendency of this appeal.

■ *Paragraph 2.* This orders defendant officers and the International to cooperate and assist the Monitors in accomplishing the basic purposes of the consent decree. We understand this portion of the paragraph is not questioned. The paragraph then provides, however, that in fulfilling this obligation,

> the Defendant provisional officers and the Defendant International shall comply promptly and fully with all future Board of Monitors' Orders of Recommendation that are reasonable and relevant to the basic purposes of the Consent Decree.

This provision, which is questioned, we set aside for the simple reason that defendants may not, by this general court order, be placed under obligation to comply with future Monitors' recommendations the terms of which are not known. Violation, if it occurs, must be in respect of specific court orders. This is basic to correct judicial administration. Rule 65(d) Fed.R.Civ.P. provides that injunctions "shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained. * * *" See also Hartford-Empire Co. v. United States, 323 U.S. 386, 410, 65 S.Ct. 373, 89 L.Ed. 322, as to the necessity of avoiding vagueness in court decrees. The recent decision of the

---

16. We do not need, therefore, to resolve the dispute as to whether or not the consent decree, see paragraph 8, Appendix A, left the time for the calling of the new convention to await a recommendation of the Monitors. We incline to think it did not; but, even if, as defendants urge, new elections and a new convention were to be held at any time the defendants might choose after a year, the court had power in the circumstances to extend the time.

Supreme Court in Scull v. Com. of Virginia ex rel. Committee on Law Reform and Racial Activities, 359 U.S. 344, 79 S.Ct. 838, 3 L.Ed.2d 865, is illustrative of the need for definiteness in contempt cases.

In this connection and in order to clarify the relationship of the court-appointed Monitors to these proceedings, we state again how the Monitors are to function. They may make recommendations, in writing if desired, in those areas where the defendants have substantive obligations under the consent decree as validly modified. If the defendants fail to comply in any significant respect with these obligations, whether or not the subject of a recommendation, the Monitors may report this fact to the court. The court, after affording a hearing to the defendants, may order the defendants to take any necessary action within the scope of its decrees. These court orders hereafter must themselves provide what the defendants are to do, not simply refer to previous or future recommendations.[17]

*Paragraphs 6 and 7.* These are concerned with the eligibility of members for election to office, insofar as payment of dues is concerned under a union "check-off" system. Under Article II, section 4 of the 1952 constitution a member to be eligible for election must be in "good standing." Article X, section 5(c) of the 1952 constitution conditions membership in good standing upon a member paying dues to local unions on or before the first business day of each month. This was interpreted by defendants to require the timely receipt of the dues by the union even when checked off by the employer. The court, in conclusion of law No. 16, held the checking-off employer to be the agent of the union, thus taking the position that the employee involved would be in "good standing" even though the union was not in timely receipt of the dues, and in paragraph 6 of

the February 9th decree ordered defendants so to interpret the constitution.

A 1957 amendment to Article X, section 5(c) provides that where dues are checked off it shall be the obligation of the member to pay one month's dues in advance but thereafter he remains in good standing for each consecutive month for which the check-off is made. This amendment seems to us adequately to meet the District Court's view as to the proper interpretation of the 1952 provision, and to solve the problems.[18] *Paragraph 7* requires defendants to give the membership at least three months notice of the effective date of this 1957 amendment. A schedule of dates is set forth which, due to our stay, cannot now be met. If notice is still desired, notwithstanding our above conclusion, counsel for the parties, and the Monitors, are requested to seek agreement, failing which they may submit to the District Court their respective suggestions.

*Paragraph 8.* On September 29, 1958, the defendants filed a motion for the removal of Mr. Godfrey P. Schmidt as Monitor, to which Mr. Schmidt filed detailed answers, including supporting affidavits. Paragraph 8 requires defendants to cause to be read at all February 1959 local union meetings, and published in the February issue of The International Teamster a notice that the court has found that the defendants have presented no evidence to support their motion to disqualify and remove Mr. Schmidt as a Monitor, and that the motion was wholly without merit. The court found (Finding of Fact No. 129) that no evidence supported defendants' contentions, that seven of the eight unsworn charges against him were withdrawn, that "the remaining charge of 'conflict of interest,' although pressed by Defendants, was and is unproved on the record," and that all charges were in all respects unproved.

17. See footnote 15, supra.

18. We add, however, that while paragraph 6 orders defendants to adopt and apply the interpretation of the 1957 amendment as set forth in conclusions of law No. 16 and No. 17, we are unable to find the court's interpretation therein, and leave this open for consideration by the District Court if any question of interpretation persists.

We accept these findings other than the one as to conflict of interest. The undisputed facts are that during the time Mr. Schmidt has been a Monitor he has represented Producers Distributors Associates, an employer, in arbitration proceedings in New York involving Teamster Local 816, including conferences with the Secretary-Treasurer of the local in New York; that a member of the office of Mr. Schmidt appeared before the National Labor Relations Board on behalf of Howard Johnson Restaurants in connection with decertification proceedings involving this same local; that he represented the Schraffts Restaurant chain in New York and in connection therewith assisted to some degree in passing upon a contract between Teamsters' Local 816 and a trucker company who is the commissary carrier for Schraffts, and had conferences on the contract with the Secretary-Treasurer of the local; that his firm represented the Coin Service Company of New Jersey in negotiations of the company looking toward a contract with Local 575, a Teamster local in New York, and also represented the Independent Sanitation Owners Group of New York in contractual negotiations with Teamsters' Local 813. There is no suggestion by us that in any of these matters, or otherwise, Mr. Schmidt has not conducted himself lawfully, in good conscience, and openly; but we believe conflict of interest exists nonetheless. His private employment in negotiating with Teamster locals on behalf of employers tends potentially—and that is all that is necessary to create conflict of interest—to condition the exercise of his public responsibility as an officer of the court. Obvious, too, is the potential pressure upon Teamster locals in negotiating terms of employment with one who while representing the bargaining employer is a Monitor who possesses great influence in the affairs of the Teamsters.

Since, however, Mr. Schmidt is an officer of the District Court, we simply state our disagreement with the finding that no conflict of interest was shown.

Whether the conflict of interest which was shown disqualifies him as a Monitor is a matter to be determined initially by the appointing court in the exercise of a sound discretion on our remand of the case.

The time specified in paragraph 8 for publishing that the charges against Mr. Schmidt were unproved has long since passed. Nevertheless, if the defendants published any of the charges against him they should with equal distribution publish now that the charges were found to be unproved, except that conflict of interest was proved and that the question whether this conflict of interest disqualifies Mr. Schmidt is as yet unresolved. If counsel for the parties cannot agree as to how this publication shall be phrased or published, either or both may resort to the District Court for a decision. If, however, the defendants did not publish the charges no countervailing publication is required. Moreover, we are pointed to no evidence of publication at the local union level which requires an offsetting notice to be read to the locals.

We have not overlooked the suggestion of Mr. Schmidt that his situation is no different in essence from that of Monitor Wells. But we have no question before us as to Monitor Wells. None has been presented to the courts and no hearing had with respect to him.

*Paragraph 1.* This provision, which we consider last because of its nature, orders defendant provisional officers and the Teamsters to comply promptly and fully with the Board of Monitors' Orders of Recommendation No. 4, No. 11, No. 12, No. 14, No. 16, No. 17, No. 18, No. 19, No. 20, No. 21 and No. 23, and the Supplemental Orders to No. 16 and No. 19. We have been obliged to consider each of these Orders of Recommendation upon their merits, notwithstanding that their blanket approval by reference does not accord with the procedure hereafter to be followed. We pass upon their validity by determining whether or not they are within the obligations assumed in the consent decree.

*Order of Recommendation No. 4.* Charges had been filed with the Monitors by a rank and file committee against certain officers of Local 107 located at Philadelphia, based upon testimony adduced before the Senate Select Committee on Improper Activities in the Labor or Management Field. After discussing the matter with the General Counsel of the Teamsters the Monitors recommended that he take up with General President Hoffa the filing of charges against the local to take it under trusteeship pursuant to Article VI, section 5 of the constitution, that a panel to hear the question consist of one International vice president, one disinterested member of the International in the area, and a public member. The Order of Recommendation recites agreement that Price Waterhouse would be authorized to audit and review the books of the local and the auditing work sheets of the Senate Select Committee so as to examine for presentation to the panel the evidence that the committee had. It provided also that the International immediately notify the bonding company covering the officers of Local 107 in view of the disclosures made by the Senate Select Committee.

Price Waterhouse made an audit and filed its report with the Monitors in September 1958. This was forwarded to General President Hoffa and General Counsel Williams with the request that the charges be filed and a hearing conducted.

We are confronted in this court with a controversy between the parties as to the good faith of the defendants. They claim that full compliance with the recommendations was not possible because an injunction was obtained in a state court of Pennsylvania prohibiting the hearing by the panel. The Monitors contend the injunction would not have been obtained if defendants had proceeded in good faith to carry out the recommendations. As previously pointed out, we sustain the power of the court to modify, and, therefore, to interpret, the consent decree aside from the question of good faith.

We uphold the validity of court approval of Recommendation No. 4 under paragraph 5 of the consent decree. To the extent that the substance of the recommendation has not been fulfilled defendants are obligated in good faith to do so except as they may be under order of a court of competent jurisdiction to the contrary. In that event they should make a good faith effort to obtain modification or dissolution of the injunction consistently with the rights of the parties, or, in the alternative, should institute promptly new proceedings to carry out Recommendation No. 4 in a manner designed to avoid legal questions which might lead to court action to bar such proceedings.

*Order of Recommendation No. 11.* This involves election procedures of Local No. 245, in Springfield, Missouri. It recommends postponement of an election and a two-year audit of books and records of the local. The record indicates the recommendation has been complied with except as to the audit. The local has refused the advice of General President Hoffa to permit an audit by Price Waterhouse. We think the power of General President Hoffa under Article X, section 11 of the constitution over a trusteed local, such as No. 245, requires him to insist that the audit be conducted notwithstanding the reluctance of the local. If this power is not exercised, the problem should be presented for further consideration by the District Court.

*Order of Recommendation No. 12.* This recommendation recites that John J. McNamara, President of Local No. 295 in New York City, and Secretary Treasurer of Local 808, also in New York City, has been convicted of extortion. The Board recommends that he be requested by General President Hoffa to take leave of absence from these offices until his appeal has been decided and that Price Waterhouse be authorized to make a one-year audit of the books and finances of Local 808. We believe this recommendation finds basis in paragraph 5 of the consent decree which provides for the estab-

lishment of accounting and financial methods, procedures and controls affecting funds of the Teamsters and its subordinate bodies. The General President complied with the recommendation by requesting McNamara to take leave of absence and requesting the local to permit the audit. It appears, however, that these requests have not been complied with. Without ruling generally on the use by the General President of his coercive powers under the constitution it is our opinion that in the circumstances of this particular situation, if the local's refusal has persisted, the General President should exercise his full constitutional power to bring about compliance.

*Order of Recommendation No. 14.* The subject of this recommendation is a report made by Price Waterhouse with respect to preliminary observations of Teamster financial records. The Monitors desired to have the defendants place the report on the agenda of a meeting of the General Executive Board, so that representatives of the auditing firm and the Monitors might discuss the report with the Board. The matter is important. It is concerned with the establishment of records of good standing of members of local unions, and with record-keeping essential to auditing and other fiscal purposes of both the Teamsters and locals. Though not complied with at the time of the hearing in the District Court, counsel for the defendants then stipulated that the recommendation would be accepted. The authority of the court to order compliance is found in paragraph 5 of the consent decree.

*Order of Recommendation No. 16 and Supplemental Order No. 16.* These grew out of testimony before the Senate Select Committee on August 6 and 7, 1958, on the basis of which the Monitors felt justified in recommending an investigation of Seventh Vice President Owen B. Brennan for alleged misuse of the Michigan Conference of Teamsters Welfare Fund by making weekly payments therefrom to a boxer whom Mr. Brennan was managing. The payments were sought to be sustained, the record indicates, on the theory that the boxer was an investigator for the fund. We find authority of the court to require this matter to be investigated in paragraph 5 of the consent decree, relating to the establishment of controls affecting funds of the Teamsters and its subsidiary bodies and providing further that all persons having custody and management thereof shall be required to adhere to recognized legal standards and obligations imposed upon fiduciaries. But since Order of Recommendation No. 16 required certain action to be taken in August 1958 the date is obviously no longer applicable and was not applicable when the decree of February 9, 1959, was entered.[19] Proceedings should be instituted forthwith in accordance with the provisions of the union constitution for investigation and disciplinary action, to the extent that this has not already been done. No reason is advanced why the procedures for conducting such a hearing adopted by the Board of Monitors during Judge Cayton's chairmanship, set forth in the memorandum of Monitor Wells concerning Orders of Recommendation Nos. 16 and 17, should not be followed, with the exception that since some of the charges refer to possible association between defendant Hoffa and Mr. Brennan, independent counsel should advise the charging party, as requested by the Monitors. We find no constitutional provision to preclude this, though there is a provision requiring that only a member represent an accused member. The choice of independent counsel should be in consultation with the Monitors and need not be limited to the three persons they have recommended.

It appears that whereas this Order of Recommendation directed that Price Waterhouse audit the records of the Michigan Conference Welfare Fund for the period when the payments are alleged to have been made, the defendants

---

19. This illustrates again a reason why any action required of the defendants in the future should be incorporated in an order of the court rather than by court approval of a previously issued recommendation of the Monitors.

do not have exclusive jurisdiction over such a matter and the Conference itself opposed the audit. Nevertheless, defendants should exercise their full constitutional authority to have those in charge of the fund consent to the audit. If unsuccessful, independent proceedings within the jurisdiction where the local is situated might be required.

*Order of Recommendation No. 17.* This Order of Recommendation is based again on testimony before the Senate Select Committee which indicates that Mr. Feldman, a business agent for Local 929 in Philadelphia, allegedly offered to settle a labor dispute between various locals and an employer for a reported $50,000. The Monitors recommended that charges should be filed against Feldman, a hearing conducted, suspension from office ordered, and that an allegation before the Senate Select Committee to the effect that Feldman was organizing an independent union of the employees of a restaurant chain be investigated. We think the subject matter of this Order of Recommendation finds support in paragraph 5 of the consent decree.

We are advised that the defendants at the time of the hearing below had begun compliance by bringing charges against Mr. Feldman, suspending him, and initiating his trial on the charges. These procedures should be concluded if this has not yet been done.

With respect to that portion of the recommendation which calls for an investigation into Mr. Feldman's activities in the organization of an independent union of the employees of the Dewey restaurant chain in Philadelphia, we think it also finds support in paragraph 5 of the consent decree and, therefore, should be complied with.

*Order of Recommendation No. 18.* This requires that the General President publish in The International Teamster, beginning with the September 1958 issue, all Orders of Recommendation beginning with No. 15, and that a 500 to 1,000 word report of the activities of the Board of Monitors, to be prepared by them, be published in each issue. Here again the date has long since passed for initial compliance, and in any event we disapprove the requirement that Orders of Recommendation be published. The court in the exercise of a sound discretion may require publication of its own orders, and in the interest of keeping the membership advised of the progress of the case we substitute for the publication of all recommendations a requirement that the Monitors prepare in consultation with counsel for defendants a summary of previous Orders of Recommendation which have been consented to, or have been approved by the District Court and by this court, together with a statement of the course of the Monitorship, which, when approved by the District Court, shall be published in The International Teamster.[20] If future reports of the activities of the Monitors are to be published in union periodicals, they should be the product as far as possible of consultation by the Monitors with defendants. After approval by the court if disagreement arises, the reports should be published at intervals mutually agreed, or, in the absence of agreement, as the District Court shall decide.

*Order of Recommendation No. 19 and Supplemental Order No. 19.* This recommendation involves alleged use of the funds of Local 515 of Chattanooga, Tennessee, by Glenn W. Smith, President of the local, to "fix" a criminal case involving officers and members of a Teamsters' local. The recommendation was in substance that the General President (1) exercise the powers conferred upon him under Article XVIII, section 10 of the constitution and file charges by August 25, 1958, for expulsion of Smith and H. L. Boling who allegedly participated in the "fix," for misappropriating union funds, violating their oath of office, engaging in conduct unbecoming a member or officer, tending to bring the union into disrepute and violating sound trade union princi-

---

20. In the event the contents of such a summary cannot be agreed upon as we suggest, the District Court shall resolve the differences.

ples; (2) that the General President investigate the acquisition of the sum of $13,500 by the local from the Southern Conference of Teamsters during June 1951, and take appropriate action if investigation produces evidence of wrongdoing; (3) that he instruct Price Waterhouse to audit the books of the local covering the period involving the alleged payment from union funds to fix the criminal case; and (4) that Smith and Boling be immediately suspended.[21]

Supplemental Order No. 19, dated August 22, 1958, recommends that the General President assume original jurisdiction over the charges against Smith and Boling by 5 p. m. that day and by that hour also notify the local. Monitor Wells protested the issuance of this recommendation at the direction of the Chairman without a meeting or conference with the other Monitors, again insisting on proper procedure.

It appears that prior to the hearing in the District Court General President Hoffa did assume original jurisdiction and order pre-trial suspension of Smith and Boling and that their trial had been held. The result does not appear. The Monitors in their brief state they have been informed that Smith and Boling were never actually suspended, but that Smith took leave of absence after being convicted by a federal court of income tax evasion, while Boling is still in charge of the local.

We approve the District Court's requirements of an audit and investigation as within its authority under paragraph 5 of the consent decree. We approve also, as authorized by the same provision, the general thrust of the court's approval of this recommendation and supplement thereto, and we observe that in light of the statements of the Monitors in their

brief, above referred to, it might be necessary for the District Court to enlist the constitutional authority of the General Officers of the Teamsters, under Article X, section 11(a) and Article XVIII, section 13(c). If these provisions are not adequate to bring a remedy to a situation where either a local or an officer of a local refuses to comply with an order of the General President, such other steps as the parties and the Monitors may suggest to the District Court as within its authority may be considered.

Again we point out, that when the court takes action on the basis of a recommendation by the Monitors it should incorporate in its own order what is to be done and not simply approve a previously issued recommendation incorporated by reference. We point out also that the Monitors must use procedures which afford opportunity for all three Monitors to participate. Each has responsibilities as an officer of the court.

*Order of Recommendation No. 20.* This recommendation is dated August 19, 1958. It recommends to General President Hoffa (1) the promulgation by August 27, 1958, for adoption by all locals of "Rules for the Conduct of Local Union Nomination Meetings and Election of Officers," and (2) that by September 15, 1958, the Executive Boards of all local unions, including trusteed locals, adopt these rules in accordance with Article XXI, section 5 of the constitution. This recommendation states that it was the intention of the Monitors that these rules would remain temporarily in effect until they could recommend the adoption of model provisions for inclusion in local union by-laws. It also recommends that the General President by August 27, 1958, appoint a committee to confer with the Monitors and their staff concerning these rules and model provisions.

21. Monitor Wells dissented from the recommendation of immediate suspension without a hearing or opportunity to defend and to the majority's factual recitals. He stated that charges had been filed within the local union and were scheduled for prompt hearing. He also protested the failure of the majority to follow procedure required by court order "and our published procedures," urging processing of properly filed charges as provided in the constitution, without prejudgment.

General President Hoffa advised the Monitors in response that he could not promulgate the attached rules because in his view some were in violation of the constitution and others were unworkable. The Monitors met with the General Executive Board September 16, 1958, and discussed the rules, after which they were redrafted and resubmitted under date of October 24, 1958.

Some elections were held in the fall of 1958 without adoption of the suggested rules and we do not understand that the Monitors now seek to cancel the results of such elections but only to sustain the charge of defendants' "bad faith" in failing to adopt the proposed rules in time to govern the elections. Since we are deciding the validity of the consent decree and its modification of February 9, 1959, including the validity of recommendations as enforced by the court, without passing upon the issue of bad faith, there seems nothing left to do about this particular recommendation insofar as past events are concerned. But there will be future elections and the consent decree imposes definite obligations on both defendants and Monitors with respect thereto. Under paragraph 4 of the consent decree the Monitors must draft a model code of local union by-laws or model provisions for inclusion therein. Undoubtedly some of these will govern election procedures which will be recommended for adoption by local unions. And paragraph 3 of the consent decree requires defendants to see that elections are conducted in a manner to afford members certain rights guaranteed by the constitution, particularly "the right to honest advertised elections" and "the right to fair and uniform qualifications to stand for office." Further discussions between the Monitors and the defendants should be had as a means of securing the adoption by the locals of rules under which these obligations can be fulfilled. As presently appears, therefore, further court action may wait a reasonable time for these discussions.

*Order of Recommendation No. 21.* This recommendation recites that the Monitors had made a thorough study of information regarding a merger of Local No. 183, Fairbanks, Alaska, with Local No. 959, Anchorage, Alaska, and sets forth particulars from which it was concluded that the merger was brought about invalidly and therefore should be set aside. The recommendation is that by a specified time schedule, beginning in September 1958 and ending in January 1959, the merger should be dissolved, the locals restored to separate status, trusteeship reinstated as to Local 183 pending local elections, a new trustee named therefor, an audit made of books and records of this local from January 1, 1957, to date (September 5, 1958), and by January 1, 1959, Local 183 be restored to self government. Monitor Wells dissented, on the grounds that the recommendations ignored the welfare of the membership in the basic matter of bargaining and management relationship, exceeded the authority of the Monitors, were based in part on alleged procedural irregularities which had not been established, and for other reasons.

While the problem presented by the court's approval of this recommendation is not without difficulty, we think we would not be warranted in declaring the approval invalid. Paragraphs 3 and 7 of the consent decree give jurisdictional basis to require a merger of locals to be made in a manner consistently with the rights of the membership which the defendants obligated themselves to protect under the construction we have given to paragraph 3, read with paragraph 7.

The defendants take the position that the Order of Recommendation was not one with which compliance could be required, and contend that the evidence established ample notice and that the merger was desired by the vast majority of members of both locals. Since, as above stated, we hold the Order of Recommendation in substance to be within the authority of the court to approve under the consent decree, an opportunity to comply with this recommendation should now be afforded with knowledge of its approval in substance by this court. Since the

time schedule fixed, however, is long since passed, and indeed had largely passed before the District Court approved the recommendation in December last, counsel for the plaintiffs and defendants, in consultation with the Monitors, should have the opportunity to agree upon a remedy for the situation, if possible, failing which a new order of the District Court may be sought by plaintiffs or Monitors.

*Order of Recommendation No. 23.* In this order the Monitors recommended that certain members of Local 377 of Youngstown, Ohio, be declared eligible to run for office. The members had been ruled ineligible under interpretations of the 1952 constitution and 1957 amendments thereto because their employers had failed to remit their checked-off dues on or before the first day of the month. We have already resolved the issues involving check-off and eligibility to hold office in an earlier part of this opinion, and have determined that eligibility for office shall be governed by the 1957 amendment to the constitution. It appears all that remains to be done on this point is for General President Hoffa to notify the members involved and the executive board of their local that they are eligible to run for office under the terms of the 1957 amendment.[22] We agree with the position of the Monitors that the acceptance of the dues from the employer by the local without demanding the payment of one month's dues in advance constituted a waiver of the requirement of such payment.

It will be seen from this opinion that we have not treated as a modification of the consent decree the provisions of the decree of February 9 except those relating to the convention, namely, paragraphs 3, 4, and 5. Except as moot we have on the whole sustained these as valid under the principles of the Swift case.

We have considered the other provisions of the February 9 decree to be in the nature of instructions or interpretations, rather than modifications. Each of those we have sustained finds its basis in the terms of the consent decree itself.[23]

We are not entering our judgment simultaneously with handing down this opinion. This variation from the usual practice is due to the nature of the case and our desire to expedite the ultimate solution of the litigation by affording an opportunity now, before entering judgment, for the parties and the Monitors to agree if possible upon a form of judgment which is consistent with our opinion, or to seek clarification before entry of judgment. See Rule 25 of the Rules of this court, 28 U.S.C.A. This is not to say that we invite reconsideration of any matter decided, but rather agreement upon a means of carrying out the decisions reached. Accordingly the parties and the Monitors are allowed ten days for the purposes stated. However, the stay entered herein March 31, 1959, which was extended on April 17, 1959, until the further order of this court, is dissolved so as to require the carrying out of the decree of the District Court of February 9, 1959, to the extent we have not disapproved it in this opinion.

## APPENDIX A

### Consent Decree entered January 31, 1958

[Caption omitted]

LETTS, Chief Judge.

This cause came on to be heard this term of court upon plaintiffs' demand for equitable relief as set out in the amended complaint filed herein, which amended complaint prays in the main for the calling of a new convention of the International Brotherhood of Teamsters, Chauf-

---

22. Neither the parties nor the Monitors refer in their briefs or arguments in this court to that portion of the recommendation which has to do with the eligibility of Mr. Joseph Blumetti to run for office, so we assume we need not concern ourselves with this provision.

23. Paragraph 8 of the February 9 decree, however, regarding conflict of interest, grew out of a motion filed in the proceedings in the District Court.

feurs, Warehousemen and Helpers of America and for a new election of officers in accordance with the provisions of the International's Constitution. After 22 days of trial during which oral testimony was heard and documentary evidence received, the parties hereto have consented and do hereby consent to the entry of the decree hereinafter set out.

1. It is hereby ordered that the preliminary injunction heretofore entered in this case on the 23rd day of October, 1957 be and the same is hereby dissolved and nullified, and the amended constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America adopted at the 17th convention of the International at Miami, Florida in October, 1957 shall forthwith go into effect, provisionally in accordance with the following paragraphs of this decree, and the officers of the International elected at the convention shall forthwith take office provisionally in accordance with the following paragraphs of this decree.

2. Godfrey Schmidt, nominated by the plaintiffs, L. N. D. Wells, Jr., nominated by the defendants, and Judge Nathan Cayton, nominated jointly by the plaintiffs and defendants, are hereby appointed and shall serve as a Board of Monitors for the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America for such period of time and with such duties as are hereinafter set out. Judge Nathan Cayton, the Monitor jointly nominated by the parties, shall serve as chairman of the Board of Monitors. A majority vote of the Monitors shall be determinative of any action to be taken by the Monitors. In the event of the inability or unwillingness to serve, or other disability on the part of any Monitor, he shall be relieved of his duties and discharged of the obligations hereunder, and a successor Monitor shall be appointed in his place by the Court upon nomination by the party or parties, as the case may be, who nominated the Monitor to whose office the successor Monitor shall be appointed. Furthermore, the Monitors are

at all times subject to removal by this Court in the exercise of its discretion for any cause and are subject as officers of the Court to supervision and direction of the Court in performing these duties as hereinafter enumerated.

3. The Board of Monitors in order to insure the enforcement and protection of all rights of the individual members and the subordinate bodies of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, as guaranteed by the provisions of the International constitution, in particular,

a. the right to vote periodically for elective officers,

b. the right to honest advertised elections,

c. the right to fair and uniform qualifications to stand for office,

d. the right to freedom to express views at meetings

shall counsel with the General Executive Board of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America and make recommendations upon review of appeals taken pursuant to provisions of the International constitution.

4. The Board of Monitors shall draft a model code of local union by-laws not inconsistent with the International constitution, or model provisions for inclusion therein not inconsistent with the International constitution, which model code or provisions the General Executive Board of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America shall recommend for adoption by the local unions.

5. The General Executive Board in consultation with the Board of Monitors shall review and where needed establish accounting and financial methods, procedures and controls affecting all funds and properties held, received and disbursed by or on behalf of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and its subordinate bodies. All persons having custody or management of such

funds or properties shall be required to adhere to the recognized legal and equitable standards and obligations imposed upon fiduciaries in the handling of such funds and properties.

6. No officer of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America shall have a personal financial interest which conflicts with the full performance of his fiduciary duties as a representative of. the International, nor shall he own or have a substantial business interest in any enterprise with which the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America bargains collectively, or in any business enterprise which is in competition with any other business enterprise with which his union bargains collectively, nor shall he own or have a substantial business interest in a business enterprise a substantial part of which consists of buying from, selling to, or otherwise dealing with the business enterprise with which the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America bargains collectively.

The provisions of this section do not apply in the case of an investment in the publicly traded securities of widely held corporations which investment does not constitute a substantial enough holding to affect or influence the course of corporate decision.

7. The General Executive Board of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America shall examine and review the status and condition of affiliated local unions under trusteeship to the end that trusteeships be removed and self government restored with all deliberate speed consistent with the best interests of the membership of such locals. The Board of Monitors shall examine and review the status and condition of locals where trusteeships are maintained and shall counsel with and make recommendations to the General Executive Board looking toward the removal of trusteeships where removal is consistent with the best interest of the membership of the locals.

8. The Board of Monitors appointed herein shall serve as such for at least one year and thereafter until a new convention of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America is held at which convention officers are duly elected and sworn; provided, however, that this Court after one year from the date of this order, in its discretion upon petition of the defendant International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, or upon petition of the Board of Monitors may discharge and release said Board of Monitors, or the Court on its own motion may discharge them at any time.

A new convention and election of officers shall be held at any time after the expiration of one year from the date of this order when the General Executive Board by majority vote shall resolve to call such convention and hold such election. The Board of Monitors may recommend to the General Executive Board after the expiration of one year from the date of this order that a new convention and election be held. In all events such new convention and election of officers must be called and held within the time specified by the provisions of the constitution of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America as amended.

9. The call for a new convention and election of officers of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America shall be issued in accordance with the International constitution by the General. Executive Board.

a. Delegates to such convention shall be elected in strict and literal compliance with the International constitution.

b. The General Executive Board of the International shall recommend to its affiliated locals that such delegates be elected by secret ballot and,.

where practicable, under the supervision of such outside agencies as the Honest Ballot Association.

c. The examination and approval of all credentials submitted by delegates to said convention shall be made by the convention Credentials Committee and the Board of Monitors is authorized to counsel with such Credentials Committee and make recommendations to it.

10. The Board of Monitors shall receive compensation for the services performed by them in an amount to be determined by this Court, such payment to be made by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

11. The Board of Monitors shall make a report at least semi-annually to this Court and at the conclusion of its services and may make recommendations after consultation with the General Executive Board for amendments to the International constitution for proposal at the next International convention.

12. The General Executive Board of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America shall make available to the Board of Monitors such clerical and technical help as is reasonably required and necessary.

13. No reprisal of any sort or nature shall be taken against the plaintiffs or any witnesses or affiants in this case or any other person or persons because of their participation in or connection with this case and the General Executive Board shall press charges against anyone violating this section.

14. The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America shall pay the fees of counsel for the plaintiffs and expenses incurred by those in the prosecution of this action, such fees and expenses to be determined by this Court.

Ordered this 31st day of January, 1958.

I consent:
Edward Bennett Williams

We consent:
Godfrey P. Schmidt
M. Joseph Blumenfeld
Thomas Dodd

## APPENDIX B

February 9, 1959, decree of the court construing and modifying the Consent Decree

[Caption omitted]

LETTS, Chief Judge.

Upon consideration of the Findings of Fact and Conclusions of Law made this 9th day of February, 1959, it is hereby

1. Ordered, that the Defendant provisional officers and the Defendant International shall comply promptly and fully with the Board of Monitors' Orders of Recommendation No. 4, No. 11, No. 12, No. 14, No. 16, No. 17, No. 18, No. 19, No. 20, No. 21 and No. 23, and the Supplemental Orders to No. 16 and No. 19.

2. Ordered, that the Defendant provisional officers and the Defendant International shall cooperate and assist the Monitors in accomplishing the basic purposes and various provisions of the Consent Decree and, in fulfilling their obligation to assist and cooperate in good faith with the Monitors, the Defendant provisional officers and the Defendant International shall comply promptly and fully with all future Board of Monitors' Orders of Recommendation that are reasonable and relevant to the basic purposes of the Consent Decree.

3. Ordered, that Section 8 of the Consent Decree is modified and that the first two sentences of the second paragraph are deleted therefrom and the following provision is inserted in their place:

"The time for the next convention shall be subject to recommendation by the Board of Monitors to the General Executive Board of the International Brotherhood, with the exact time of holding the convention being subject to the final approval of the Court."

4. Ordered, that the convention call by the Defendant provisional officers and

Defendant International on September 16, 1958, is null and void.

5. Ordered, that the Defendant provisional officers and the Defendant International Union shall advise all local unions and other subordinate bodies that the call for a convention in the City of Chicago, March 15–19, 1959, is null and void. That all local unions and other subordinate bodies shall be notified that said convention shall not be held. Further, that the Defendant provisional officers and the Defendant International shall have a notice read at all February local union meetings and published in the February issue of The International Teamster to the effect that the authorization of a convention call has been declared null and void by the Court and that the next convention will not be held as previously announced by the Defendants.

6. Ordered, that the Defendant provisional officers and the Defendant International shall adopt and apply the interpretations of the provisions of Article X, Section 5(c), of the 1952 International Constitution and the 1957 amendment thereto, as set forth in Conclusions of Law Nos. 16 and 17.

7. Ordered, that the Defendant provisional officers and the Defendant International Teamsters Union shall give the membership of the International Union, at least three (3) months' notice of the effective date of the 1957 amendment to Article X, Section 5(c) and shall notify the members that the 1957 amendment will become effective on May 1st, 1959, and the Defendants shall have such notice, together with the full text of Article X, Section 5(c), and an explanation thereof, which shall be subject to approval by the Monitors (a) published in the February, March and April, 1959 issues of The International Teamster, (b) read at the February, March and April, 1959, local union general membership and divisional meetings, and (c) posted during the months of February, March and April, 1959, on all bulletin boards where local union notices are customarily posted.

8. Ordered, that the Defendant provisional officers and the Defendant International shall have a notice read at all February local union meetings and published in the February issue of The International Teamster to the effect that the Court has found that the Defendant International has presented no evidence to support its motion to disqualify and remove Godfrey P. Schmidt, Esquire, as a Monitor, and this motion was wholly without merit.

### APPENDIX C

Summary of obligations imposed
upon defendants by the
consent decree

*Para. 3.* *Rights of Individual Members.* We construe this paragraph as requiring the Teamsters to protect the constitutional rights of individual members and locals in regard to elections, qualifications for office and freedom to express views at meetings. This conforms with the restrictive interpretation of this provision suggested by the Monitors in their brief in this court.

*Para. 4.* *By-Laws.* The Teamsters shall recommend for adoption by the locals a model code of by-laws, or model provisions for inclusion in the by-laws, to be drafted by the Monitors. (See Para. 4 of Appendix D.)

*Para. 5.* *Fiduciary Standards.* The Teamsters shall review and where needed establish accounting and financial methods for all funds and properties held, and shall require all fiduciaries of these funds to adhere to recognized legal and equitable standards and obligations imposed on fiduciaries.

*Para. 6.* *Conflict of Interest.* No Teamster officer shall have a conflicting financial interest or put himself in such a business position that will create a conflict of interest.

*Para. 7.* *Trusteed Local Unions.* The Teamsters shall examine and review the status of local unions in trusteeship to the end that the trusteed unions be returned to self-government.

*Para. 8. Call of New Convention.* The Teamsters shall call a new convention and election after one year from the date the consent decree is signed. (The construction of this provision is discussed in the opinion. See also Para. 8 of Appendix D.)

*Para. 9. New Convention.* The call for the new convention by the Teamsters must be issued in accordance with the constitution, delegates to it shall be elected according to the constitution, and the Teamsters must recommend that such delegates be elected by secret ballot and, where practicable, under the supervision of outside agencies.

*Para. 10.* Compensation of Monitors to be paid by Teamsters, as determined by court. (See discussion of paragraph 14, infra.)

*Para. 12. Clerical and Technical Help to Monitors.* This is required to be made available by the Teamsters.

*Para. 13. Reprisals.* These are prohibited.

*Para. 14. Counsel Fees and Expenses.* Counsel fees of plaintiffs and their expenses incurred in the prosecution of the action, determined by the court, are to be paid by the Teamsters. (See discussion of paragraph 14, infra.)

### APPENDIX D

Summary of functions of the Monitors under the wording of the consent decree

*Para. 3. Rights of Individual Members and Locals.* The Monitors shall counsel and make recommendations regarding the rights of individual members and locals under the constitution with respect to elections, qualifications for office and freedom to express views at meetings.

*Para. 4. By-Laws.* The Monitors shall draft a model code of by-laws or model provisions for inclusion therein. (See Para. 4 of Appendix C.)

*Para. 5. Fiduciary Standards.* The Monitors shall recommend as to proper financial and accounting procedures and adherence to fiduciary standards of members handling union funds.

*Para. 7. Trusteed Local Unions.* The Monitors shall examine and review the status and condition of trusteed locals and shall counsel with and make recommendations looking toward removal of that status where consistent with the best interests of locals.

*Para. 8. Call of New Convention.* The Monitors may recommend when a new convention and election call may be made. (See Para. 8 of Appendix C and discussion in the opinion of the meaning of this provision.)

*Para. 9. New Convention.* The Monitors are authorized to counsel with and make recommendations as to credentials of delegates at new convention.

*Para. 11. Reporting.* The Monitors shall make a report at least semi-annually to the court and at the conclusion of their services and may make recommendations for amendment to the constitution for proposal at the next International convention.

WILBUR K. MILLER, Circuit Judge (concurring in part and dissenting in part).

In the main, I concur in the opinion. I dissent however from the action of the majority, contained in the discussion of *Paragraph 2,* in setting aside the provision that

"the Defendant provisional officers and the Defendant International shall comply promptly and fully with all future Board of Monitors' Orders of Recommendation that are reasonable and relevant to the basic purposes of the Consent Decree."

I do not agree that this language places the defendants "under obligation to comply with future Monitors' recommendations the terms of which are not known." It merely requires the defendants to comply with future recommendations "that are reasonable and relevant to the basic purposes of the Consent Decree." The defendants may apply to the District

Court for relief from any future recommendation they consider unreasonable and irrelevant under the consent decree, and need not comply with it unless and until the District Court has ordered them to do so.

### Supplemental Opinion

Before EDGERTON, WILBUR K. MILLER, and FAHY, Circuit Judges.

FAHY, Circuit Judge.

In accordance with our opinion of June 10, 1959, the plaintiffs, the defendants, and the Monitors, have agreed upon a form of proposed judgment to carry out our decisions except as herein stated.

1. In their papers first filed after our opinion of June 10, 1959, the plaintiffs and the Monitors requested that we insert a provision at the conclusion of paragraph 1(c) of the proposed judgment that General President Hoffa again request John J. McNamara, President of Local 295, and Secretary-Treasurer of Local 808, to take leave of absence pending decision on his appeal from his conviction of extortion and in the event he does not promptly take said leave of absence, General President Hoffa forthwith exercise his full constitutional power to bring about compliance. Such a provision was not included in the decree of the District Court on appeal and so was not passed upon by this court in our opinion of June 10, 1959. Moreover, subsequent to our opinion Mr. McNamara's conviction for extortion was reversed by the Appellate Division of the Supreme Court of New York. 188 N.Y.S.2d 84. In view of this the Monitors, in their second papers filed since our opinion was rendered, have withdrawn their request.[1]

We make no change in our opinion in respect of this matter.

2. Plaintiffs and a majority of the Monitors also requested in their said first papers that we insert in the judgment a provision which would direct that General President Hoffa notify the nominees involved in a local election, and the Executive Board of Local Union No. 377, that the nominees are eligible to run for office, and that he direct Local No. 377 to proceed promptly to hold the election.[2]

The United States District Court for the Northern District of Ohio has enjoined the holding of this election in a case involving these nominees and Local 377, as well as several of our defendants. On appeal, the United States Court of Appeals for the Sixth Circuit has ordered the case remanded to the District Court for determination of a jurisdictional question depending on diversity of citizenship of parties, Gaw v. Higham, 267 F.2d 355. Petition for certiorari to the Supreme Court of the United States to review the decision of the Court of Appeals was denied June 29, 1959, 79 S.Ct. 1453. The Monitors, in their second papers filed since our decision of June 10, 1959, advise us that in view of the order of the District Court barring an election in Local 377, "it would appear that the compliance date with this Court's Order concerning Local 377 should be postponed until after the injunction is withdrawn, dissolved or vacated." We think it would be preferable, and we so hold, that any conclusion or action by this court respecting Order of Recommendation No. 23, which covers this matter, including what we said about that Order of Recommendation in our opinion of June 10, 1959, be vacated, without prejudice to reconsider-

---

1. The Monitors accompanied their withdrawal of the request with the following statement:

"the Board of Monitors respectfully states to the Court that it is the Board's position that under the circumstances of the McNamara case the recommended action would have effectuated the basic purposes of the Consent Order and that there was ample constitutional authority for the General President to have re-

quired Mr. McNamara to take a leave of absence or to have suspended him."

2. Monitor Maher opposed inclusion of this in our judgment for the reason that he finds that defendant Hoffa is under order of the United States District Court for the Northern District of Ohio, Eastern Division, directing him to take no action in this matter until further order of that court.

ation of the matter by the District Court in light of the subsequent progress or disposition of the litigation referred to.

 3. With respect to the eligibility of members in general to run for office, a matter dealt with in paragraphs 6 and 7 of the decree of the District Court of February 9, 1959, it is our opinion that members were not given adequate notice of the coming into effect of the 1957 amendment to Article X, Section 5(c) of the constitution of the Teamsters so as to enable those who desired to comply with its provisions to do so. Although the District Court stated that the 1957 amendment became effective by the entering of the consent decree on January 31, 1958, the language of the court as a whole clearly shows that the amendment was not actually to become effective in operation without proper promulgation and notice to the members. It is our view that no member shall be declared ineligible for office for failure of compliance with this amendment until notice of the effectiveness of the amendment shall have been given to the membership generally in a manner to be agreed by the Monitors and counsel for the parties, or, in the absence of such agreement, as is required by the District Court.

The situation thus existing leaves in effect, governing the eligibility of some members, the provisions of Article X, Section 5(c), of the 1952 constitution. It is therefore incumbent upon us to interpret that provision. It is our view that, as the District Court held, where an employer under an agreement with a local union checked off dues of an employee member, the employer was the agent of the union and consequently the member should not be considered delinquent if the employer, through no fault of the member, delayed paying the dues to the union on time, that is, on or before the first day of the month.

Our opinion of June 10, 1959, is amplified and modified as herein set forth.

Our judgment this day entered is substantially in the form agreed upon by the parties and the Monitors, with additional provisions by us to conform the judgment with what we have said in this Supplemental Opinion.