**SALTZ BROS., Inc., v. SALTZ et al.**

**No. 7700.**

United States Court of Appeals for the
District of Columbia.

Argued June 10, 1941.

Decided Aug. 4, 1941.

John E. Laskey and Charles B. McInnis, both of Washington, D. C., for appellant.

Leon Tobriner, Selig C. Brez, and Walter N. Tobriner, all of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and EDGERTON and RUTLEDGE, Associate Justices.

PER CURIAM.

This is the third appeal in this litigation. The first asserted the jurisdiction of the court below to appoint a receiver for the present appellant, a foreign corporation engaged in business exclusively in the District of Columbia.[1] The second involved the jurisdiction to determine the validity and title to corporate offices of appellant.[2] That suit was begun in September, 1935, by Saltz Brothers, Incorporated, against Lewis Saltz and S. Thomas Saltz to oust the latter from their control of the business of the appellant. The District Court held that the Saltzes were unlawfully in possession of the store and referred the case to an auditor for an accounting of their transactions. They appealed, and we affirmed. The accounting was had, and the present appeal is by the corporation from a decree of the District Court confirming the auditor's report.

The facts are these: The corporation was organized in July, 1929, under the Connecticut laws to engage in the retail haberdashery business in Washington city. Four hundred shares of common stock of $100 par value each were issued, half to D. T. Langrock, manufacturer of clothing, and the other half to Lewis and Thomas Saltz.[3] Lewis Saltz was elected president, Thomas Saltz secretary, and Langrock treasurer; and Lewis and Thomas

---

[1] Saltz et al. v. Saltz Bros., Inc., 65 App.D.C. 393, 84 F.2d 246.

[2] Saltz et al. v. Saltz Bros., Inc., 67 App.D.C. 116, 89 F.2d 860.

[3] Subsequently the capital stock was increased to 835 shares.

Saltz were employed to manage the business for a period of five years at a salary of $5,000 each for the first year (later increased to $5,200), and in addition a bonus on the net annual sales of the corporation in excess of $150,000. The five-year employment contract expired October, 1934, and in the early part of 1935, or perhaps sooner, dissensions arose between the parties, which are set out in sufficient detail in our opinion on the last appeal.[4] The question on this appeal is whether Lewis and Thomas Saltz are entitled to salary and bonus after October, 1934, the expiration of their employment contract, while they retained control of the store and continued to operate it. The record shows that in February, 1935, a new board of directors was chosen and Langrock made president and treasurer of the corporation, and that on February 25, 1935, Langrock demanded possession of the store and ordered the depository banks of the corporation not to honor the Saltzes' signatures on checks. But the next day negotiations were opened for the sale of Langrock's shares to Lewis and Thomas Saltz, and the order to the banks was countermanded. Unsuccessful bargaining continued more or less until September 26, 1935, when Langrock again demanded possession of the store, which the Saltzes refused, and the following day the corporation instituted this suit for injunction and accounting. After the appeal to this court from the order of the District Court granting the ouster of defendants and ordering an accounting, the latter vacated the store, and the accounting proceeded.

The auditor held (1) that in computing the bonus payable to the Saltzes, sales made in the leased departments of the appellant's store should be included; (2) that the Saltzes were entitled to salaries and bonuses for the period from February 25, 1935, to September 26, 1935, when the second demand for possession was made; (3) that they were entitled to salaries, but not the bonus, for the period from September 26, 1935, to February 24, 1936, the approximate date the store was vacated and delivered to the corporation. The court confirmed the auditor's report in all respects.

We are of opinion that the decree of the lower court, so far as it approved items (1) and (2) of the report, should be affirmed.

■ First. The agreement for a bonus was based on the net sales of the business, and we agree with counsel for appellees that this properly means net sales made at the place of business, and this seems to us very clearly to have been the contemporaneous construction placed upon the agreement by the parties themselves. Before the quarrel, that basis was accepted and payment made accordingly. We think this is sufficient to sustain the decree as to this item for the period appellees were lawfully in control of the store.

■■ Second. Shortly after his election as president in February, 1935, Langrock demanded possession of the store, but the next day, as we have seen, negotiations began and there was an agreement, if not directly between the parties at least between counsel, that the Saltzes were to continue in the operation of the business, and that the "status" was to remain unchanged, until the negotiations were completed. Langrock at that time was willing to sell his stock, and the purpose of the agreement to maintain the status quo was to give sufficient time to arrange terms on which it could be bought. They did continue in charge, and between that date and February, 1936, when they vacated, the corporation had one of its best years. We think there is sufficient evidence in the record, therefore, to sustain the auditor and the lower court on the finding that the Saltzes were entitled to salaries and bonuses to September 26, 1935, when the second demand for possession was made.

But we think the auditor was mistaken and that the court erred in confirming his finding that the Saltzes were entitled to salaries after September 26, 1935. Whatever may properly be said about their rights and status during the previous period cannot be said of the situation after this date. Then and there Langrock, as president, went personally to the Saltzes and demanded possession of the store. The demand was refused, and he was ordered out of the store. The next day the corporation brought this suit, and from thence the Saltzes remained in possession in defiance of the legal action of the corporation in discharging them and putting an end to any agreement, tacit or otherwise, which had formerly existed. The corporation adopted the only means open to it except to violently eject them from the premises, and

---

4 67 App.D.C. 116, 89 F.2d 860.

the Saltzes, on the other hand, with no conceivable right continued for more than five months to occupy the property and conduct the business. In this they assumed the risk of being found to be intruders. We can find no evidence in the record which would justify any other conclusion than that the Saltzes were trespassers after September and until the order of the court resulted in their delivery of the property to its owners. The rule in such circumstances is that, however valuable the services, the person in whose behalf they are rendered cannot be required to pay for them where they are rendered against his will and without his consent. Sutton v. United States, 256 U.S. 575, 580, 41 S.Ct. 563, 65 L.Ed. 1099, 19 A.L.R. 403; Auerbach v. Alland, City Ct.N.Y., 196 N.Y.S. 145; Cook v. Branine, 341 Mo. 273, 107 S.W.2d 28, 32; Yoakum v. Gossett, Tex. Civ.App., 200 S.W. 582, 583; DeProsse v. Royal Eagle Distilleries Co., 135 Cal. 408, 67 P. 502; Arnold v. Adams, 27 App.Div. 345, 49 N.Y.S. 1041.

Affirmed in part; Reversed in part; Costs to be divided and the case remanded with instructions to proceed in accordance with this opinion.