524

## ABBOTT, PULLER & MYERS v. PEYSER.
### No. 7889.

United States Court of Appeals for the District of Columbia.

Decided Dec. 31, 1941.

Mr. Fred P. Myers, of Washington, D. C., with whom Mr. Edwin S. Puller, of Washington, D. C., was on the brief, for appellants.

Mr. William E. Richardson, of Washington, D. C., for appellee.

Before STEPHENS, VINSON, and RUTLEDGE, Associate Justices.

VINSON, Associate Justice.

This is an appeal from the District Court's disallowance of attorney fees. The request grows out of work done in the dissolution and receivership proceedings of the Montgomery Building & Loan Association. The Association had A, B, and C stockholders. By far the largest class was C. To become a C stockholder one had to purchase a Foundation Surplus Certificate (some were labelled Surplus Certificates). Thus all C stockholders were certificate holders. Also, practically all, if not all, certificate holders were class C stockholders. Nonetheless there was no required ratio and none existed in fact between one's financial interest in certificates and in C stock.

There were no outside creditors,[1] and while we are not presented with the details of the Association's structure, counsel for both sides grant that the ABC stockholders had clear priority to the assets unless the certificate holders could show fraud. While the assets of the Association were valued at the outset at around $565,000 and the claims of the stockholders were $538,000, the parties state that the certificate holders were headed for nothing, in the absence of showing fraud, on their claims of a little less than $317,000.

Out of approximately 1900 certificate holders some 238 intervened in the receivership proceedings, agreeing to the dissolution, but claiming a full return of their money because of fraud. Abbott, Puller & Myers, plaintiffs in the District Court, appellants here, represented these 238 allegedly defrauded certificate holders. The law firm will be referred to as the plaintiff.

With this claim in, the trial court was requested to and did appoint special counsel on behalf of the ABC stockholders. It was decided, after discussion among counsel and receiver, not to ask the court to appoint special counsel for the certificate holders, but instead the plaintiff enlarged to

---

[1] See opinion in Geiger v. Peyser, App. D.C., 123 F.2d 167, decided November 3, 1941.

396 the named intervenors and amended its petition to embrace all similarly situated.

There were protracted negotiations between the receiver and the representatives, including plaintiff, of the groups in conflict. Eventually, a plan, opposed by plaintiff, was worked out and submitted individually to the claimants of all classes.[2] Out of some 1999 claimants, there were only 68 rejections.[3] Whereupon the plan was confirmed by the court with leave to the 68 dissatisfied persons to pursue their individual remedies. In 61 resulting cases to which our attention has been called the District Court found against certificate holders alleging fraud, but permitted them to accept the plan. Under the plan there has been made available approximately $125,000 for the certificate holders.

Plaintiff requested the court to award it, as attorneys for the certificate holders, reasonable fees from the undistributed funds in the hands of the receiver, offering to refund equitably the fees already received.[4] The District Court denied the petition stating, *inter alia,* that plaintiff was not entitled to be paid out of the fund in the hands of the receiver, and moreover, that a large number of the certificate holders, being substantial shareholders as well, were interested in increasing the fund to the shareholders, and hence all certificate holders, as a class, were not benefited by plaintiff's work.

We agree that no matter what fee has been earned by the plaintiff, it should not come from the undistributed funds in the hands of the receiver. Plaintiff did not create, enhance, preserve, or protect that fund. The question in the receivership proceeding was the distribution of that fund to two or more classes of claimants. Plaintiff at best represents only one class that sought a part. To pay plaintiff out of the monies in the hands of the receiver would be to require the ABC stockholders, for example, to pay a fee to the counsel that opposed them. That is not the law for the ordinary case.[5] There is no reason to depart from the usual rule here. Strictly speaking this settles the case, for it answers plaintiff's prayer for relief.

In his brief here plaintiff states, however, that, "This is an appeal from an order of the District Court for the District of Columbia denying the application of appellants for allowance of counsel fees *from the distributive share of the holders of Foundation Surplus Certificates,* a class claimed to be benefited as a result of the work of appellants herein." (Ital. supplied) Assuming that this is so we still see no error in the judgment of the District Court.

Our first ground for thus concluding is the lack of a sufficient showing by plaintiff that it represented all certificate holders. It seemed to have been generally agreed that the certificate holders, per se, were not entitled to anything. The prior claims of the stockholders were more than likely to absorb all of the assets with the sundry costs deducted. At least no intervening petition in behalf of all certificate holders was filed. When plaintiff's allegedly defrauded certificate group entered the picture, the court was requested to and did appoint special counsel on behalf of the ABC stockholders to resist these claims which would have priority. There was no request to and the court did not appoint special counsel for the certificate holder group, but instead plaintiff amended its intervening petition to include all similarly situated. That amendment did not change the nature of plaintiff's representation.

---

[2] The plaintiff in the associated Geiger case asserted that he worked out the plan, and claimed counsel fees from the undistributed funds in the hands of the receiver to be charged against the distributive share of the ABC stockholders. He argued that his work in their behalf prevented litigation over the claims of the allegedly defrauded certificate holders represented by plaintiff in the instant case. The trial court denied the application for fees. We affirmed. See footnote 1.

[3] See footnote 1.

[4] "Wherefore, your petitioners pray for an Order authorizing and directing the Receiver to pay to them from undistributed funds in his hands, fees as attorneys for holders of Foundation Surplus Certificates in such amount as the Court finds reasonable and proper in the circumstances, subject to such refund of fees heretofore received as to the Court may seem equitable."

[5] Nolte v. Hudson Nav. Co., 2 Cir., 47 F.2d 166; McCormick v. Elsea, 107 Va. 472, 59 S.E. 411; Scott v. Superior Court, 208 Cal. 303, 281 P. 55; Hempstead v. Meadville Theological School, 286 Pa. 493, 134 A. 103, 49 A.L.R. 1149; Wallace v. Fiske, 8 Cir., 80 F. 2d 897, 107 A.L.R. 749; 7 C.J.S., Attorney and Client, § 193(b) (2).

The original intervening petition filed on behalf of some 238 certificate holders by plaintiff was predicated, beyond doubt, upon fraud. The amended petition which is in the record before us is filled with such words as misrepresented, misled, deceived, and defrauded. Wherefore it is prayed that the petitioner, those whose names appear in exhibit A, seemingly some 396 persons, and *others similarly situated* be put in the status of creditors and receive back in full their payments. The similarly situated, then, were those certificate holders potentially able to show fraud. Plaintiff may indicate that for the purposes of this proceeding the "similarly situated" included all certificate holders. At that stage in the proceeding, however, if plaintiff believed that all 1900 certificate holders instead of 400 were potentially able to show that they were entitled to the creditor status, and if plaintiff wanted to work in behalf of the entire certificate group, it would seem logical to amend the petition to include all holders of surplus certificates. We cannot conclude therefore that through the amendment of the petition itself plaintiff became the representative of all certificate holders.

While a dissolution and receivership proceeding is inherently imbued with more compromise and conference table discussions and with less precise joining of issues than many types of litigation, and while plaintiff would like to suggest in his brief that his 400 clients were representative of the 1,900 certificate holders, that all were potentially able to show fraud, and that he argued for a pro rata distribution for all 1,999 claimants, we must conclude from the nature of the proceedings in absence of proof to the contrary that there was a nondefrauded certificate group and that plaintiff has not made a sufficient showing at any point where it became the special representative of all certificate holders by implicit approval, by self appointment, or in effect by position taken. The gist of plaintiff's case is that in effect by the position it took, its work benefited the nondefrauded certificate holders as well as the defrauded.

It is true that many certificate holders who did not allege fraud benefited. It is also true that somewhere in the negotiations, it was decided for the sake of expedition or for other reasons to compromise with all certificate holders. Plaintiff, however, has not shown this to be a result of its being the special emissary of the nondefrauded certificate group. Plaintiff for example, shows us no compromise plan, including all certificate holders, which it urged. The plan that was adopted was not worked out by plaintiff.[6] In fact plaintiff opposed it. True, plaintiff states that his opposition was partly due to holding out for a pro rata distribution to all claimants rather than a lesser percentage for the certificate holders. Plaintiff's position at that time might well have been motivated by the good for its own clientele. Plaintiff started out representing those alleging fraud. We find no later adoption of the interest of the nondefrauded group. Thus on the showing made we must conclude that at best plaintiff represented only some part, though perchance large, of the certificate holder group.

Plaintiff suggests that but for its opposition the certificate holders as a group would have received nothing. That may be true. The idea that the certificate holders as a group were to receive something might never have been sown, might not have flourished, might not have led to a harvest. That the machinery of negotiation was set in operation by one's intervening petition which eventually led to some third group benefiting, however, is not enough service upon which to award counsel fees.[7]

Even if plaintiff had shown it represented nondefrauded as well as defrauded certificate holders, it must be remembered, as the trial court pointed out, that all certificate holders still did not have the same interest. Inasmuch as every class C stockholder is a certificate holder, and nearly all if not all certificate holders are class C stockholders, and inasmuch as there is no definite ratio whatsoever of one's financial interest in the two, it follows that many (and we understand that it was the great majority) of the certificate holders benefited by the new distribution, but it also follows that some benefited little, some broke even, and some lost. Thus again there is not the homogeneity of interest within the certificate holder group to make it a class for the purposes of this litigation. We see no special reason in this case why those who did not gain and those who lost by plaintiff's work should pay plaintiff a fee.

---

[6] See footnote 2.

[7] Thomas v. Peyser, Receiver, et al., 73 App.D.C. 155, 118 F.2d 369.

Under all the circumstances that have been presented to us, we cannot perceive any error in the trial court's disallowance of the fee.

Affirmed.

STEPHENS, Associate Justice, concurs in the result.

