Steve MILONE et al., and Edward McFarland, et al., Appellants,

v.

John F. ENGLISH et al., Appellees.

No. 16348.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 24, 1962.

Decided July 19, 1962.

See also 285 F.2d 267.

Mr. Thurman Arnold, Washington, D. C., with whom Messrs. Seymour J. Spelman, Alexandria, Va., Joseph S. McCarthy, Washington, D. C., and Robert Silagi; New York City, of the bar of

the Supreme Court of New York, were on the brief, for appellants.

Mr. Edward Bennett Williams, Washington, D. C., with whom Messrs. Raymond W. Bergan and David Previant, Milwaukee, Wis., were on the brief, for appellees.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The main litigation, initiated September 19, 1957, was first considered by this court in English v. Cunningham, 106 U.S. App.D.C. 70, 269 F.2d 517, cert. denied, 361 U.S. 897, 905, 80 S.Ct. 195, 4 L.Ed.2d 152, 181. The present appellants, who are members of the Teamsters Union, referred to now as the International, were among the original plaintiffs. In February 1961 they filed in the main litigation, some aspects of which were still pending, a motion which for the purpose of deciding this appeal may be described as a motion (1) for an award of attorneys' fees, to be paid by the International, to counsel now representing the appellants (2) to require the officers who were defendants in the litigation to account for and restore to the International the amount of all fees and expenditures paid by the International in defense of the suit, which included defense of the officers, and (3) for an injunction to prevent representation of the International by counsel who also represent the officer defendants. By the order now before us on appeal the motion was in all respects denied by Judge Letts, who had become most intimately acquainted with the various ramifications of the litigation in the District Court.

1. We consider initially appellants' position that the officer defendants should be required to reimburse the International in amounts used to pay the fees and expenses incurred in defending the suit. In support of their position appellants contend that the main suit was a derivative one on behalf of the International, though nominally the International was a defendant, to protect it from the mismanagement and fraud of its officers, and that accordingly funds of the International could not validly be used to defend such officers. The essence of the appellees' answer is that the suit was not derivative but was primary against the International. It is said that the International was entitled to counsel of its choice and could select the same counsel who represented the officers and pay for their services, except those which did not benefit the International.

■ We think the issue may not be fully resolved by determining whether the suit was derivative or primary in the usual sense, for the litigation took on a special and unique character of its own. The problems presented by this appeal require solution under equitable principles applicable to this character. In its earliest stages the attorney for the International, who later with the consent of all parties became a Chairman of the Board of Monitors, appeared also for the officer defendants and entered upon defense of the suit as though it were a primary one against the International.[1] Counsel who represented the plaintiffs, including those who are now our appellants, treated the case in the same manner even during the most controversial period of the litigation. Relief was sought against the International, though of course to be effectuated through its officers. No recovery of moneys or properties from the officers was sought for the benefit of the International. We accordingly hesitate to decide on the theory that the suit was derivative that appellants are entitled to an accounting with respect to fees or expenses paid by the International in defending the suit. Yet the suit did have the purpose of benefiting the International by ridding it of alleged fraud and mismanagement on the

1. His appearance was entered September 27, 1957, the suit having been filed September 19, 1957. He was superseded by other counsel during the month of November, 1957.

part of at least some of the defendant officers. Whether such a suit falls strictly within the derivative category or not, equity may apply to it principles which are comparable to those applicable to derivative suits. When thus resorted to, however, equitable principles are available to both sides of the controversy.

 As a general proposition we think funds of a union are not available to defend officers charged with wrongdoing which, if the charges were true, would be seriously detrimental to the union and its membership. See, e. g., Highway Truck Drivers & Helpers, Local 107 v. Cohen, 182 F.Supp. 608, 619–22 (E.D.Pa.1960), aff'd, 3 Cir., 284 F.2d 162, cert. denied, 365 U.S. 833, 81 S.Ct. 747, 5 L.Ed.2d 744. Cf. Witherspoon v. Hornbein, 70 Colo. 1, 196 P. 865 (1921), involving officers of a corporation. The treasury of a union is not at the disposal of its officers to bear the cost of their defense against charges of fraudulently depriving the members of their rights as members.[2] It is clear the complaint in this case charged individual officer defendants with conduct which was seriously detrimental to the interests of the International and to the rights of its members. And in deciding whether or not union funds may be used to defend such a suit the final outcome of the charges is not determinative; for if the charges have substance a sound resolution may be prevented by the very fact of dual representation during the process leading to a decision with respect to the charges. Different counsel would be required in this process. In other words, counsel who are chosen by and represent officers charged with the misconduct, and who also represent the union, are not able to guide the litigation in the best interest of the union because of the conflict in counsel's loyalties. In such a situation it would be incumbent upon counsel not to represent both the union and the officers.

The above principles, however, may not equitably be applied in full to the present litigation because of the course it has taken and factors which have entered into its conduct, giving to it a special and unique character. We refer primarily to the Consent Decree which the plaintiffs, including the present appellants, entered into as a settlement of the case alleged in their complaint. Prior thereto and during the course of the trial which was terminated by the Consent Decree, no motion was filed or suggestion made by plaintiffs or their counsel with respect to the representation of the defendants, or with respect to expenditures made by the International in defense of the suit. All defendants, individuals and International, were then represented by the same counsel, with the record knowledge not only of plaintiffs and their counsel, but with the full knowledge of the trial judge who approved the Consent Decree. Under the Decree, moreover, the principal officer defendant as well as the other officers elected at the convention[3] were authorized to take office provisionally in accordance with the Decree, and a Board of Monitors was set up with duties described in the Decree. The charges in the complaint became merged in the Consent Decree and in a plan for working out the problems raised by the complaint. This plan placed the International and its officer defendants in like positions in the litigation insofar as a choice of counsel is concerned, with exceptions of a character to be referred to. No doubt this is why the District Court refused in the order now before us to require the accounting sought. To have done so would have been in substance to have repudiated the Consent Decree itself, which the present plaintiffs through their former counsel had approved. Their counsel having negotiated the Consent Decree with counsel for the International, plaintiffs

2. Where there is no substance to a charge of wrongdoing it may be that the union is not barred from standing the cost of the defense, but there is the difficulty of determining the question of substance where the same counsel represent both the union and the officers.

3. See English v. Cunningham, supra.

are not in a position to assert that the International could not pay the expense attributable to the negotiations on its part and to carrying out the terms of the Decree.[4]

The International is entitled to employ counsel and to pay their fees if this is done in accordance with its constitution and bylaws. Appellants make no contention based on the constitution or bylaws. Since their motion must rest in equity and is unaided by a violation of the Union's constitution or bylaws, the solution must rest in equity.

■ Had the original complaint been pursued to a conclusion on the merits, rather than being abandoned by reason of the program of reform embodied in the Consent Decree, or if the question of representation and expense of the defense had been raised prior to the Consent Decree, the view we would take might be different. But, as we have indicated, these very plaintiffs joined through their counsel in consenting that the principal officer defendant remain in office in charge of the affairs of the International, though provisionally until a new convention was held, and the District Court approved this arrangement. And it appears quite clearly from a review of the monitorship which ensued that many matters of concern to the monitors gave rise to no conflict between a reasonable position on behalf of the International and the position adopted by its officers. This constantly occurred, with counsel for plaintiffs never suggesting a conflict of interest until this motion was filed more than four years after the litigation had been initiated and during which it had run a most active course under the close supervision of the court. The issue was not raised at any of the previous stages of the protracted litigation, as could have been done by a motion to dis-

qualify counsel. Such a motion is of an equitable nature and should be made with promptness and reasonable diligence once the facts are known. See Marco v. Dulles, 169 F.Supp. 622, 632 (S.D.N.Y. 1959).[5] There is no indication the facts regarding representation were not known to all parties and to the court from the inception of the suit.

Under the conditions above set forth, and especially in view of the Consent Decree, it would be inequitable at this stage of the litigation to seek to unscramble the matter in the terms sought by present counsel for these appellants, who throughout have been plaintiffs, and to require, with possible exceptions to be noted, the amounts expended by the International to be accounted for, not by counsel who received fees, but by the officers of the International.

We may not, however, carry too far the effect of the course taken by the litigation, including the Consent Decree and Monitorship, vital as they have been to the special and unique character of this litigation. There have come to the court's attention some matters in connection with which, however great the effect to be given to the course of litigation, the Consent Decree and the Monitorship, funds of the International could not even now equitably remain unaccounted for if used to pay for the defense of officers. Illustrative is the subject matter of the Interim Report, that is, the alleged misuse by defendant James R. Hoffa of funds of a local union affiliated with the International—the so-called Sun Valley matter. In the same category, again as illustrative and not as exhaustive, would be such matters as are dealt with in Order of Recommendation No. 19 and Supplemental Order 19, referred to in our main opinion in English v. Cunningham, supra. If funds of the International have been used to defray the expense

---

4. Plaintiffs' former counsel were given the right by the Consent Decree to obtain their own fees from the International.

5. "A motion to disqualify is of an equitable nature. A party making such a motion should do so with reasonable diligence

and promptness after the facts have become known to it. There is no indication here that the facts were not at all times fully known to the moving party or to its predecessor in interest." Marco v. Dulles, supra, at 632.

of defending officer defendants charged with wrongdoing in matters of this character restoration by such officers to the International may be required. In order that such matters may be explored we will remand this aspect of the case with directions to permit further proceedings consistent with the views we have expressed.

■ 2. The court also denied the motion insofar as it sought an award of attorneys' fees to counsel who represent these appellants. The ground on which this relief was denied was that when the monitors were appointed all need for representation of the class by plaintiffs ended. We do not agree with this. It lies now within the sound discretion of the District Court, though it is under no legal compulsion to do so, to require the International to pay reasonable counsel fees to appellants' counsel should the court find, either or both, that they have materially aided in the creation of a fund for the benefit of the International by reason of the eventualities of our remand above authorized, or that they have benefited the International in other ways. While the Monitorship did indeed lift from the shoulders of the plaintiffs a large share of the burdens of the litigation, it does not necessarily follow that the plaintiffs conferred no benefit on the International by having counsel of their own to assist the class. See Sprague v. Ticonic National Bank, 307 U.S. 161, 166–167, 59 S.Ct. 777, 83 L.Ed. 1184.

■ 3. We agree with the District Court in its denial of an injunction to prohibit continuing representation of the International by counsel who represent the officer defendants. We are not advised sufficiently as to the matters remaining for disposition in the litigation to rule that they are of such a character as to justify the injunction sought in such broad terms. The Monitorship is no longer active and the litigation, still proceeding under the Consent Decree, appears to be well-nigh ended. In any event we have nothing before us upon which to base a conclusion that whatever remains to be done calls for a blanket injunction of the sort requested.

We affirm the denial of the injunction, and the denial of an accounting and restoration except as may be required on remand within the criteria we have set forth. As to the allowance of fees to counsel for appellants we reverse and remand for further consideration consistently with our opinion.

It is so ordered.