Godfrey P. SCHMIDT, Appellant,

v.

Joseph S. McCARTHY and Seymour J. Spelman, Appellees.

John T. WILEY, Appellant,

v.

Joseph S. McCARTHY and Seymour J. Spelman, Appellees.

Nos. 18617, 18626.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 15, 1965.

Decided July 21, 1966.

Petition for Rehearing En Banc Denied Sept. 26, 1966.

Mr. Cornelius H. Doherty, Washington, D. C., for appellant in No. 18617.

Mr. Mozart G. Ratner, Washington, D. C., for appellant in No. 18626.

Mr. Eugene F. Mullin, Jr., Washington, D. C., for appellees.

Before WASHINGTON, Senior Circuit Judge,* and DANAHER and BURGER, Circuit Judges.

DANAHER, Circuit Judge:

The parties now before us are four attorneys, all of whom appeared in various phases of litigation involving the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, hereinafter referred to as the International. Judicially approved fees to be paid by the International to the four, pursuant to agreement with counsel for the International, resulted in awards of $112,500 to the appellants and of $65,000 to the appellees. The latter than sued the appellants claiming that only through the efforts of the appellees had the liability of the International been established,[1] and that the appellants had contributed neither money nor services to the achievement of that result. The District Court on March 13, 1964, entered judgments in favor of the appellees against Schmidt in the amount of $15,000, and against Wiley in the amount of $13,125, with costs and interest on both judgments. We ordered the consolidation of the separate appeals.

Attorney Schmidt originally had represented 13 rank and file members of the International who had brought suit on their own behalf and on behalf of the International's membership, details as to which will more fully appear from our opinion in English v. Cunningham.[2] We then approved a Consent Decree which had been entered January 31, 1958. Schmidt continued to represent twelve of the named plaintiffs[3] for more than 26 months or until about March 30, 1960 when Attorney Spelman and an associate succeeded Schmidt as counsel to Steve Milone and certain others of the original plaintiffs.

Continuous controversy had marked the course of the Monitorship as we noted in Hoffa v. Letts,[4] and we there observed additionally that it was time for all parties, Monitors, plaintiffs and defendants, to consult in an earnest effort to reach an agreed disposition of pending matters. Especially we anticipated clearance of obstacles to a new convention of the International. We stated

---

* WASHINGTON, Senior Circuit Judge, did not participate in this decision.

1. Appellees had pointed to our opinion in Milone v. English, 113 U.S.App.D.C. 207, 306 F.2d 814 (1962). We did not there say that Attorneys McCarthy and Spelman were entitled at all events to receive fees from the International. Rather, we pointed out that it was within the sound discretion of the District Court, "though it is under no legal compulsion to do so, to require the International to pay reasonable counsel fees *to appellants' counsel* should the court find, either or both, that they have materially aided in the creation of a fund for the benefit of the International *by reason of the eventualities of our remand above authorized,* or that they have benefited the International in other ways." (Emphasis added.) 113 U.S.App. D.C. at 212, 306 F.2d at 819.

    The remand had to "do" with alleged misuse by the defendant Hoffa of funds of a local union affiliated with the International, and certain other similar matters which had been referred to in our main opinion in English v. Cunningham, *infra* note 2.

2. 106 U.S.App.D.C. 70, 269 F.2d 517, cert. denied, 361 U.S. 897, 905, 80 S.Ct. 195, 4 L.Ed.2d 152 (1959). Also we approved a plan which provided for a court-appointed Board of Monitors to assist the court and the parties in carrying out the Decree. See also Hoffa v. Letts, 109 U.S. App.D.C. 149, 284 F.2d 283 (1960) and English v. McFarland, 109 U.S.App.D.C. 187, 285 F.2d 267 (1960).

3. John Cunningham, one of the original plaintiffs, finding himself out of sympathy with the others, withdrew from the group. Certain details as to his position may be inferred from our opinion in Cunningham v. English, 106 U.S.App.D.C. 92, 269 F. 2d 539, cert. denied, 361 U.S. 897, 905, 80 S.Ct. 195 (1959), wherein we pointed out that ¶ 14 of the Consent Decree obligated the International to pay the fees of counsel for the plaintiffs in amounts subject to the approval of the District Court.

4. 108 U.S.App.D.C. 359, 282 F.2d 842 (1960). By the time Milone v. English, *supra* note 1, reached this court, some 15 appeals had been brought here as one party or other challenged various orders of the District Court.

we had no doubt that the Landrum-Griffin Act[5] had become an important factor in bringing about a situation where the International could proceed to new elections.

Thus it was that under direction of District Judge Letts counsel then in the case negotiated and on October 25, 1960, signed a proposed stipulation to settle outstanding issues and to provide for payment by the International of fees to counsel, including Messrs. Spelman, Wiley and Schmidt. The agreement failed of acceptance by some of the plaintiffs and by Judge Letts. The International thereafter denied liability for fees to counsel for the various plaintiff groups.

Next, as of November 12, 1960, Attorney McCarthy succeeded Schmidt as counsel to Edward McFarland and the remaining members of the original rank and file plaintiffs, but Schmidt was continued in the case as attorney for the class. Earlier appellant Wiley in February, 1960 had entered the case as counsel for the Dorsey and Bath group of intervenors.[6]

As discussions persisted among counsel for the respective interests, the matter of a court order to permit the International to hold a convention was high on the agenda. Wiley for the Dorsey and Bath groups contended that the convention should be accorded priority. Schmidt and counsel for the International were of similar view, but Spelman and McCarthy opposed.

Attorney Spelman prepared and on February 1, 1961, filed a "Motion to Determine Counsel Fees," seeking inter alia (1) an accounting by the International and its officer-defendants of counsel fees and expenditures during the litigation (except as to the costs of the Monitors); (2) an order requiring the individual defendants to refund all such expenditures by the International; (3) an order to restrain future such payments; (4) to enjoin representation of the International and its officers by the same attorneys; and (5) a determination of "the fees and expenses of plaintiffs' counsel to date and to direct the payment of same out of funds of the International."

That motion, adopted by Attorney McCarthy as of February 10, 1961, was served on all counsel and was argued with the International's motion that a convention be ordered. Schmidt joined the International's counsel in opposition to the Spelman motion. The International took the present appellees then to be saying "that the International should not pay its own lawyers because it is really not a defendant in the action," even as the appellees argue "that the International should pay them because it is really the true plaintiff in the action for whom they have been working." On the ground that Spelman and McCarthy had opposed the early convention, Wiley contended that Spelman and McCarthy should be denied counsel fees. Judge Letts on March 20, 1961 denied the Spelman motion in its entirety. He stated:

"It wasn't believed at that time [when the Monitors were appointed] that the attorneys involved in that litigation should go on charging fees. It was believed that the Court, through the instrumentality of this Board of Monitors, would be able to carry on and achieve what was desired in the way of reform and in preparation for a convention to be held which would assure to the rank and file membership that

5. Labor-Management Reporting and Disclosure Act, 1959 (LMRDA), 73 STAT. 532 (1959), 29 U.S.C. § 481. And see Bakery and Confectionery Workers Internat'l U. of America v. Ratner, 118 U.S. App.D.C. 269, 335 F.2d 691 (1964), re 73 STAT. 535, 29 U.S.C. § 501.

6. In Dorsey v. Cunningham, 108 U.S.App. D.C. 359, 282 F.2d 842 (1960), we directed that Dorsey, Bath, et al., be allowed to intervene "by the participation of their counsel, limited in number as the District Court may prescribe, with respect to the filing of such pleadings and papers * * * [and] to matters designed to accomplish henceforth the basic purposes of the Consent Decree of January 31, 1958".

their rights would be fully observed in the conduct of that convention." [7]

After Judge Letts had denied the motion of the present appellees for determination of counsel fees, Attorneys Spelman and McCarthy as of April 7, 1961, filed notice of appeal, and that case became our No. 16348—Milone v. English.[8] Certainly Schmidt and Wiley knew that the appeal was pending and that Spelman as attorney for four and McCarthy as attorney for eight of the original plaintiffs were then claiming that Cunningham v. English was a derivative suit. Both of these appellants but for different reasons had opposed the Spelman motion.

It would appear that three choices were open to them. Just as McCarthy joined Spelman, Schmidt and Wiley could have joined in the Spelman-McCarthy appeal in which event we can not even remotely suppose that Spelman and McCarthy would have claimed fees from these appellants. A second choice could have led these appellants to adopt an attitude of "wait and see," in which event if their right to recover their own fees could have been shown to depend upon a favorable outcome in Milone v. English, we would have had a very different problem. Finally, however, it was certainly open to them to rely upon their own right, as quite apart and distinguishable from the status of the claim of Messrs. Spelman and McCarthy.

These appellants chose the latter course. Schmidt's motion for allowance of post-decree fees seems to have stemmed from the fact that he was attorney for the class under order of court; the

International had led him to believe that his fees would be paid [9]; and indeed, that the court ultimately would bar the International from denying liability as to him by virtue of equitable estoppel. Wiley, for his part, had been allowed to intervene in behalf of the Dorsey and Bath groups, which groups had express authority from this court for representation by counsel.

So it was, as this record shows, that while Milone v. English was pending on appeal, Schmidt and Wiley had moved for an allowance to them of counsel fees and disbursements. Spelman and McCarthy filed a motion to dismiss. The International opposed, contending that the order of Judge Letts had become the law of the case.

Following the issuance of our opinion in Milone v. English on July 19, 1962, Messrs. Spelman and McCarthy filed a supplemental memorandum in opposition to fee allowances to Messrs. Schmidt and Wiley.

With matters in that posture, the International and Messrs. Schmidt and Wiley negotiated a compromise of their claims for fees. Counsel for the International announced the agreement, pointed out that it was subject to the approval and order of the court, and the Schmidt and Wiley awards were entered as of March, 1963. No appeal was taken. In like manner compromise awards to Spelman and McCarthy were later entered as of October, 1963.

The appellees in their complaint in the instant case had alleged that they

---

7. But for one reason or other, even as Judge Letts so ruled, the Board of Monitors for all practical purposes had become defunct, and it continued so until dissolved by the court's order of February 28, 1961.

As of March 3, 1961, Judge Letts ordered the International and its officer-defendants to pay fees of $69,000, supplementing earlier payments of $18,585.43, to counsel who had been appearing for the Board of Monitors.

The judge also ordered the International's Executive Board to call a convention which was held in July, 1961.

Moreover, the court long since had continued Schmidt as attorney for the class, and this court had allowed the Dorsey and Bath groups, representing more than one million members of the International, to intervene and to participate by counsel in accordance with our directive. See note 6, *supra*.

8. *Supra* note 1.

9. And see Memorandum of Frankfurter, J., in English v. Cunningham, 361 U.S. 905, 907, 910, 80 S.Ct. 195 (1959).

"by establishing their claim to fees necessarily established the claims of defendants Schmidt and Wiley. But for their efforts in securing the reversal of the lower court's ruling, no counsel fees would have or could have been paid to attorneys representing plaintiff groups in Cunningham et al. v. English et al. for services after the entry of the Consent Decree."

To support their contention that they are

"entitled to an award of reasonable counsel fees and litigation expenses to be paid out of the fees awarded to defendants Schmidt and Wiley"

the appellees pleaded reliance upon

"the doctrine of Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777 [83 L.Ed. 1184]; Doherty v. Bress, 104 U.S.App.D.C. 308, 262 F.2d 20, cert. denied [359 U.S. 934] 79 S.Ct. 649 [3 L.Ed.2d 636]; Lafferty et al. v. Humphrey [101 U.S.App.D.C. 222] 248 F.2d 82 (D.C.Cir.). * * * "

The District Judge in accepting the view thus urged made findings of fact and arrived at conclusions of law which have been challenged by the appellants. It therefore became necessary for this court to review the problems presented in the various proceedings and the records respecting the complicated issues developed over a period of years. Except where the findings embody legal conclusions which we deem inconsistent with this opinion, they are, in the main, not lacking in substantial support, and in any event can not be said to be clearly erroneous.

■ On the other hand, we have become convinced that the trial judge misinterpreted our holding in Milone v. English.[10] It by no means followed, as the District Judge seems to have thought, that other counsel for other groups of plaintiffs presenting yet other views might not recover for their services even if these appellees had been unable to recover from the International compen-

sation for themselves. Schmidt had been continued in the case as attorney for the class by order of the District Court. This court had expressly authorized representation by Wiley of the Dorsey-Bath group of plaintiffs, speaking for tens of thousands of members of the International. At issue in Milone v. English was the very real question of whether or not these appellees, Messrs. McCarthy and Spelman, were entitled to recover their own fees from the International.

We ordered a remand in Milone v. English that certain "matters" might be explored with particular reference to the recovery for the benefit of the International of such of its funds as possibly had been used to defray the expense of defending certain officers of the International who had been charged with wrongdoing. Further proceedings in such respects were therefore directed.

As it later developed, no funds were recovered as a result of the efforts of the appellees. Their report following remand explained to the District Court the "arguable" nature of the problem of recovery and outlined their doubts "whether the further litigation would be in the interest of the class." At the same time, the appellees in their report claimed as a significant contribution to the reform of the International that from

"this point forward, the International and its subordinate bodies must be governed by the principles that union officers charged with wrong doing against the union may not use union funds nor union counsel to resist such charges, nor may the interests of such officers and the union in cases of that nature be represented by the same counsel."

Of course, this court at the date of its decision could not know what results might be achieved in the course of exploration of "such matters" as occasioned the remand. We took note of the fact that the District Judge had erroneously assumed "that when the monitors were

10. *Supra* note 1.

appointed all need for representation of the class by plaintiffs ended." [11]

So it was that this court went on to open the door to the possibilities of advancing the cause of the International on the representations which had been submitted in the appeal in Milone v. English. And should "these" Milone appellants, those before the court, achieve the contemplated benefits, the District Judge was authorized from the funds of the International [12] to make an allowance of fees to counsel for the Milone appellants. Specifically, we said:

> "It lies now within the sound discretion of the District Court, though it is under no legal compulsion to do so, to require the International to pay reasonable counsel fees to *appellants'* counsel should the court find, either or both, that they have materially aided in the *creation of a fund* for the benefit of the International by reason of the eventualities of our remand above authorized, *or that they have benefited the International in other ways.*" [13] (Emphasis added.)

We observe that it did not necessarily follow that the Milone plaintiffs had conferred no benefit on the International; but at least it was to be open to the District Court to consider whether or not, to what extent and in what respects bene-

fits to the International might have stemmed from the efforts of counsel for the Milone plaintiffs, and to award fees or not as the equities might justify. In that respect, the treasury of the International might become beholden for the payment of such fees as the court might find [14] to be due to Messrs. McCarthy and Spelman.

There was no suggestion by this court, nor was there any conclusion implicitly to be derived from the *Sprague* doctrine, that failing to establish their own right to fees to be paid by the International, Messrs. McCarthy and Spelman were nevertheless to be entitled to compensation, either in whole or in part, to be awarded from fee allowances to counsel for yet other groups of plaintiffs. The former as well as the latter would have been bound to establish their own right, equitably, to compensation from the treasury of the International on the basis of *benefits* [15] conferred. And granting that Messrs. McCarthy and Spelman might have established a basis for allowance of such fees to themselves, by no means did it follow merely because of the doctrine of *stare decisis,* that counsel for other groups of plaintiffs, *ipso facto,* were to be entitled to compensation.[16]

██ In short, in Milone v. English we refused to adopt the contention that

---

11. Milone v. English, *supra* note 1, 113 U.S.App.D.C. at 212, 306 F.2d at 819. Thus this court noted that the trial judge had denied the motion filed by the appellees "insofar as it sought an award of attorneys' fees to *counsel* who represent *these appellants* [the Milone group]." (Emphasis added.)

12. It was in this connection that we perceived an analogy giving rise to liability on the part of the International as we said "See Sprague v. Ticonic National Bank, 307 U.S. 161, 166–167, 59 S.Ct. 777, 83 L.Ed. 1184." 113 U.S.App.D.C. at 212, 306 F.2d at 819.

13. Milone v. English, *supra* note 1, 113 U.S.App.D.C. at 212, 306 F.2d at 819.

14. No issue in such particulars was ultimately raised or resolved by the District Court except implicitly in that the District Court approved allowances fixed in compromise of the McCarthy-Spelman fee

claim after agreement with counsel for the International.

15. Of course if either group of attorneys had actually achieved reimbursement to the International or had otherwise created a fund, their fee claims might most equitably have become a charge upon that fund. Trustees v. Greenough, an in rem action, 105 U.S. 527, 532, 533, 26 L.Ed. 1157 (1882); Lafferty v. Humphrey, 101 U.S.App.D.C. 222, 224, 225, 248 F.2d 82, 84, 85, cert. denied *sub nom.* Benton County, Oregon v. Lafferty, 355 U.S. 869, 78 S.Ct. 118, 2 L.Ed.2d 75 (1957), a class action, as was Central Railroad & Banking Co. of Georgia v. Pettus, 113 U.S. 116, 124 (1885). And see Washington Gas Light Co. v. Baker, 90 U.S.App.D.C. 98, 102, 195 F.2d 29, 33 (1951).

16. Whittier v. Emmett, 108 U.S.App.D.C. 191, 199, 281 F.2d 24, 32 (1960), cert. denied, 364 U.S. 935, 81 S.Ct. 380, 5 L. Ed.2d 367 (1961).

the main litigation was a derivative action even as we rejected the International's contention that the suit was primary. Rather, we viewed the litigation as possessing a "special and unique character of its own," [17] so that solution of the problems presented including the possible payment of fees claimed and reimbursement of expenses could become the obligation of the International only "under traditional equitable principles." [18] Thus it was incumbent upon these appellants to establish [19] equitably their own right to compensation from the treasury of the International, in such amount as the District Court might deem fairly to reflect the benefits, if any, their services had conferred upon the International.

Thus these appellees and counsel for the International agreed upon the value of such services, and finally the District Court approved the $65,000 fee award so fixed, undoubtedly having taken into account all circumstances, as Sprague had suggested.[20] Only in that sense can it be said that *Sprague* had application here. Mr. Justice Frankfurter made clear that the District Court in exceptional cases and for dominating reasons of justice possesses *equitable power* "to grant reimbursements of the kind for which the petitioner * * * appealed to the chancellor's discretion." [21] And that is all we intimated in Milone v. English.[22]

In like manner, the appellants and counsel for the International had previously agreed upon the basis in dollar amount for the awards of counsel fees to these appellants, and the District Court had approved. Each of various groups had its own attorneys, often hostile or presenting frequently differing considerations,[23] but presumably all in good faith pressing for the collective and common objective, the welfare of the International and its membership. We may even assume that each contributed some inci-

---

17. Milone v. English, *supra* note 1, 113 U.S.App.D.C. at 209, 306 F.2d at 816.

18. Bakery and Confectionery Workers Internat'l U. v. Ratner, *supra* note 5, 118 U.S.App.D.C. at 274, 335 F.2d at 696. It was in that sense that we there cited in our note 12, Sprague v. Ticonic National Bank. In Milone v. English we had said "See Sprague v. Ticonic National Bank," utilizing the signal "See" to indicate that "the asserted opinion or conclusion will be suggested by an examination of the cited authority." *A Uniform System of Citation*, 85–86, The Harvard Law Review Association (10th ed. 1958).

19. Compare Ratner v. Bakery and Confectionery Workers Int. U., 122 U.S.App.D.C. 372, 374, 354 F.2d 504, 506, text and n. 7 (1965).

20. Sprague v. Ticonic National Bank, 307 U.S. 161, 167, 59 S.Ct. 777 (1939); and see Universal Oil Products Co. v. Root Rfg. Co., 328 U.S. 575, 580, 66 S.Ct. 1176, 90 L.Ed. 1447 (1946); Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). See generally, Guardian Trust Co. v. Kansas City Southern Ry. Co., 28 F.2d 233, 244, 245 (8 Cir. 1928); Local No. 149 I.U., U.A., A. & A.I.W. of America v. American Brake Shoe Co., 298 F.2d 212, 213, 214 (4 Cir.), cert. denied, 369 U.S. 873, 82 S.Ct. 1142, 8 L.Ed.2d 276 (1962).

21. Sprague v. Ticonic National Bank, *supra* note 20, 307 U.S. at 166, 59 S.Ct. at 780. On remand the Court of Appeals interpreted the Supreme Court's opinion as authorizing the award to the claimant Sprague, *not* against the similarly situated beneficial owners of other trust funds held by the bank but out of assets which otherwise would have been available to the unsecured creditors. Sprague v. Ticonic Nat. Bank, 110 F.2d 174, 177 (1 Cir. 1940).

22. Compare Doherty v. Bress, 104 U.S. App.D.C. 308, 262 F.2d 20 (1958), cert. denied, 359 U.S. 934, 79 S.Ct. 649 (1959), where we perceived from the stipulation and in the circumstances described, an implied covenant to compensate for the reasonable value of an attorney's services.

23. Cf. Fletcher v. Coomes, 52 App.D.C. 159, 163, 285 F. 893, 897 (1922), cert. denied, 261 U.S. 619, 43 S.Ct. 363, 67 L.Ed. 830 (1923); Thomas v. Peyser, 73 App.D.C. 155, 158–160, 118 F.2d 369, 372–374 (1941); Geiger v. Peyser, 74 App.D.C. 372, 373, 123 F.2d 167, 168 (1941); Abbott, Puller & Myers v. Peyser, 75 U.S.App.D.C. 162, 163, 164, 124 F.2d 524, 525, 526 (1941); Lea v. Paterson Sav. Inst., 142 F.2d 932, 934, 935 (5 Cir. 1944).

dental[24] benefit to the other. But, the services of such counsel for the respective plaintiff interests were to be evaluated only in terms of benefits conferred upon the *International*. Accordingly, each of the respective fee claims rested on its own footing. Absent benefits to the International, the latter would not properly have been liable at all.[25]

Since we are satisfied that the District Judge in the instant case had misapprehended the purport of our decision in Milone v. English, we are bound to reverse and to direct that judgment be entered for the appellants. It is so ordered.

Reversed with directions.

24. See Restatement, Restitution § 106 (1937) : "A person, who incidentally to the performance of his own duty or to the protection or the improvement of his own things, has conferred a benefit upon another, is not thereby entitled to contribution." Cf. Saltz Bros. v. Saltz, 74 App. D.C. 313, 315, 122 F.2d 79, 81 (1941).

25. Cf. note 5, *supra*, and Murphy v. Washington American League Base Ball Club, Inc., 116 U.S.App.D.C. 362, 366, 324 F. 2d 394, 398 (1963).