CENTRAL MILK PRODUCERS COOPERATIVE, Central Milk Sales Agency, Associated Milk Producers, Inc., Appellants,

v.

SENTRY FOOD STORES, INC., Appellee.

No. 77–1633.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1978.
Decided March 30, 1978.

Sydney Berde (argued), and Lawrence Sutin, St. Paul, Minn., on brief, for appellants.

Charles Pressman (argued), and Stephen Feinberg, Chicago, Ill., on brief, for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

STEPHENSON, Circuit Judge.

The issue before the court on this appeal is whether the trial court [1] abused its discretion in refusing to disqualify the law firm of Pressman and Hartunian from further representation of the plaintiff, Sentry Food Stores, Inc. (Sentry), in a civil antitrust action because two members of the law firm had previously worked for the government in a closely related case. We affirm.

On April 11, 1972, the law firm of Pressman and Hartunian filed suit on behalf of Sentry seeking treble damages and injunctive relief for alleged violations of antitrust laws by Associated Milk Producers, Inc. (AMPI), Central Milk Producers, Inc. (CMPC), Central Milk Sales Agency (CMSA), Associated Reserve Standby Pool Cooperative (ARSPC), Associated Milk Dealers, Inc. (AMDI), and certain of their officers and directors. *Sentry Food Stores, Inc. v. AMPI,* No. 72–C 888 (N.D.Ill., filed April 11, 1972). Sentry alleged that the defendants combined and conspired with other unnamed coconspirators to fix prices and monopolize milk marketing in the Chicago regional marketing area in violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.

The United States Department of Justice had previously filed a civil antitrust suit against AMPI in the Western District of Texas on February 1, 1972. The suit instituted by the government was transferred to the Western District of Missouri pursuant to 28 U.S.C. § 1404(a). The instant case as well as numerous related actions were eventually transferred to the Western District of Missouri for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. *See In re Midwest Milk Monopolization Litigation,* 379 F.Supp. 989 (Jud.Pan. Mult.Lit.1974).

Attorneys Ronald L. Futterman and Rebecca J. Schneiderman, while employed by the Department of Justice, participated in the investigation, preparation and prosecution of the government's suit against AMPI. Both Futterman and Schneiderman represented the United States during coordinated discovery, and worked with private counsel, including the Pressman firm, in preparing the cases for trial.

In May of 1973 Futterman announced his intention to leave the Department of Justice to join the then two-man Pressman firm. The district court was advised during a pretrial conference of Futterman's intention to join Pressman and Hartunian. In July of 1973 Futterman commenced employment with the Pressman firm as an associate and continues to be employed by that firm.

1. The Honorable John W. Oliver, Chief Judge, United States District Court for the Western District of Missouri.

On July 20, 1973, Sydney Berde, then attorney for CMPC and CMSA, wrote Charles Pressman of Pressman and Hartunian expressing his concern over Futterman's association with the firm and enclosed a draft memorandum in support of a motion to disqualify the Pressman firm. Berde indicated that he would file the motion unless he was satisfied that Pressman and Hartunian's continued involvement in the case was proper. After further communication between Pressman and Berde, Berde stated in a letter dated July 29, 1973, that the procedures to be used by Pressman and Hartunian in screening Futterman from any contact with the case were satisfactory and that he assumed that the matter was closed.

In July of 1975 Schneiderman announced that she intended to terminate her employment with the Department of Justice and that she planned to join the Pressman firm. By this time a consent decree had been filed with the district court terminating the government's litigation against AMPI. *See United States v. AMPI*, 394 F.Supp. 29 (W.D.Mo.1975), *aff'd*, 534 F.2d 113 (8th Cir. 1976). On September 5, 1975, Schneiderman joined the Pressman firm as a part-time associate. The office procedures designed to isolate Futterman from the case were applied to Schneiderman. On September 13, 1975, CMPC and CMSA filed a motion to disqualify the Pressman and Hartunian firm from further representation of Sentry in this antitrust action by reason of its employment of Futterman and Schneiderman. AMPI subsequently joined in the motion. The other defendants below specifically refused to join the motion. AMPI, CMPC, and CMSA, all presently clients of Sydney Berde, appeal from the oral ruling of the district court denying their motion to disqualify.

■ Appellee contends in its brief that an order denying a motion to disqualify is not separately appealable under 28 U.S.C. § 1291. However, in the recent case of *Fred Weber, Inc. v. Shell Oil Co.*, 566 F.2d 602, 606–07 (8th Cir. 1977), this court held that an order denying disqualification is immediately appealable under the "collateral order" exception to the "finality" requirement of section 1291. Consequently, we will consider the merits of appellants' claim.

The essence of appellants' argument is that, because of their involvement in the government suit against AMPI, Futterman and Schneiderman are disqualified from representing Sentry in the present action by Disciplinary Rule 9–101(B) of the American Bar Association Code of Professional Responsibility. This Disciplinary Rule provides: "A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee." It is further claimed that the disqualification of Futterman and Schneiderman is extended to the entire firm by Disciplinary Rule 5–105(D), which provides: "If a lawyer is required to decline employment or to withdraw from employment under a Disciplinary Rule, no partner, or associate, or any other lawyer affiliated with him or his firm, may accept or continue such employment." *See American Can Co. v. Citrus Feed Co.*, 436 F.2d 1125, 1128–29 (5th Cir. 1971); *Laskey Bros. v. Warner Bros. Pictures, Inc.*, 224 F.2d 824, 826 (2d Cir. 1955); *Handelman v. Weiss*, 368 F.Supp. 258 (S.D.N.Y.1973). These disciplinary rules are based upon sound policy considerations including discouraging government lawyers from handling particular assignments in such a way as to enhance their own future employment and the professional benefit derived from avoiding the appearance of evil.

Appellee acknowledges that neither Futterman nor Schneiderman could represent Sentry in the present action because of the activities in which they engaged while employed by the government. However, appellee argues that the disqualification of Futterman and Schneiderman should not be extended to the entire Pressman firm because appellants stipulated that Futterman and Schneiderman "rendered the government an uncompromised standard of service, conscientiousness and integrity" and because the screening procedures adopted

by the firm isolating Futterman and Schneiderman from any contact with the case avoid even the appearance of impropriety.

Appellee further urges that a rule requiring automatic disqualification of an entire firm would unduly restrict a government lawyer's future employment and would result in the government being unable to recruit competent lawyers as well as unnecessarily limiting the availability for litigants of skilled lawyers, particularly in specialized areas. *See* ABA Comm. of Professional Ethics, Opinions, No. 342 (1975); N.Y. City Bar Ass'n Comm. on Professional and Judicial Ethics, Opinions, No. 889 (1976), as reported in 45 U.S.L.W. 2292 (Dec. 14, 1976). *See also* Kaufman, The Former Government Attorney and the Canons of Professional Ethics, 70 Harv.L.Rev. 657 (1957).

■ It is clear that under a literal reading of DR–9–101(B) in conjunction with DR–5–105(D) the Pressman firm has committed a violation of the Code of Professional Responsibility by continuing to represent Sentry after hiring Futterman and Schneiderman. However, proof of a Code violation does not necessarily resolve the issue before us. Although the Code of Professional Responsibility establishes proper guidelines for the professional conduct of attorneys, a violation does not automatically result in disqualification of counsel. *See Meat Price Investigators Ass'n v. Spencer Foods, Inc.,* 572 F.2d 163 (1978); *W. T. Grant Co. v. Haines,* 531 F.2d 671, 676–77 (2d Cir. 1976); *Fisher Studio, Inc. v. Loew's, Inc.,* 232 F.2d 199 (2d Cir.), *cert. denied,* 352 U.S. 836, 77 S.Ct. 56, 1 L.Ed.2d 55 (1956). The sanction of disqualification rests in the discretion of the trial court and its determination will only be overturned upon a showing of abuse of such discretion. *Fred Weber, Inc. v. Shell Oil Co., supra; W. T. Grant Co. v. Haines, supra; Lefrak v. Arabian American Oil Co.,* 527 F.2d 1136 (2d Cir. 1975); *Waters v. Western Co.,* 436 F.2d 1072 (10th Cir. 1971).

In resolving the issue before us we follow the guidelines enunciated by Judge, now Chief Judge, Kaufman in *Emle Industries, Inc. v. Patentex, Inc.,* 478 F.2d 562, 564–65 (2d Cir. 1973):

> We approach our task as a reviewing court in this case conscious of our responsibility to preserve a balance, delicate though it may be, between an individual's right to his own freely chosen counsel and the need to maintain the highest ethical standards of professional responsibility. This balance is essential if the public's trust in the integrity of the Bar is to be preserved. Moreover, we are mindful that ethical problems cannot be resolved in a vacuum.

In the present case, after expressing doubts concerning the propriety of the Pressman firm hiring Futterman, Berde[2] approved the screening procedures proposed by the Pressman firm to insulate Futterman from the case. These screening procedures include not allowing Futterman to work on any milk-related matter; he may not discuss the cases with anyone employed by Pressman and Hartunian; he may not answer any inquiries from any litigants in the milk cases; and all documents and correspondence are screened to avoid inadvertent violation of these screening procedures. In July of 1973 Berde expressly agreed not to file the motion to disqualify which he had prepared and planned to file.[3]

---

2. At this time Berde was counsel for CMSA and CMPC. Counsel for AMPI at that time was notified of the possibility that the Pressman firm had committed a code violation but chose not to file with the court a motion to disqualify.

3. On July 29, 1973, Berde sent the following letter to Pressman:

Dear Mr. Pressman:

This will confirm our telephone conversation of July 27, 1973, relative to the proposed Motion [to disqualify] that I previously sent you.

Upon your representation and agreement that Ron Futterman will not communicate with, nor supply any information to, any representative of the Justice Department, nor to any of the other parties in the pending milk litigation or their counsel without the approval of counsel for CMPC or Order of the Court, I have agreed that I will not pursue the matters set forth in my draft Motion.

A motion to disqualify should be made with reasonable promptness after a party discovers the facts which lead to the motion. This court will not allow a litigant to delay filing a motion to disqualify in order to use the motion later as a tool to deprive his opponent of counsel of his choice after substantial preparation of a case has been completed. Here appellants not only waited more than two years after they knew Futterman had been hired to formally raise the issue, but they specifically approved the arrangement followed by Pressman and Hartunian with respect to screening Futterman from the case. It is not claimed that this arrangement has been violated. In view of these circumstances we find that appellants have waived their right to object to the hiring of Futterman. *See Redd v. Shell Oil Co.,* 518 F.2d 311, 315 (10th Cir. 1975); *United States Fidelity & Guaranty Co. v. Bolding,* 447 F.2d 462, 464 n. 1 (10th Cir. 1971); *Milone v. English,* 113 U.S.App.D.C. 207, 211, 306 F.2d 814, 818 (D.C.Cir. 1962); *Marco v. Dulles,* 169 F.Supp. 622, 632 (S.D.N.Y.), *appeal dismissed,* 268 F.2d 192 (2d Cir. 1959). *Cf.* ABA Comm. of Professional Ethics, Opinions, No. 342 (1975) (allows waiver by government of prohibition of ex-government attorney representing another party against the government in a matter substantially related to work conducted while a government employee); ABA Code of Professional Responsibility DR–5–105(C) (allows representation of multiple clients if full disclosure and consent by clients). *But see W. E. Bassett Co. v. H. C. Cook Co.,* 201 F.Supp. 821 (D.Conn.), *aff'd,* 302 F.2d 268 (2d Cir. 1962).

In deciding to hire Schneiderman in 1975 the Pressman firm relied upon the fact that objections raised concerning the employment of Futterman had been withdrawn in 1973. Furthermore, in February of 1974 the district court invited any party who objected to firms involved in this litigation hiring former government employees who had worked on the government milk cases to file a motion to that effect.[4] No such motion was filed. The identical screening procedures used with respect to Futterman were applied to Schneiderman.

The district court was notified in advance that Futterman and Schneiderman would be joining the Pressman firm and approved the screening procedures to be employed. In addition appellants have stipulated that they do not allege that either Futterman or Schneiderman has actually communicated with anyone in the Pressman firm concerning any of the milk cases since terminating their employment with the Justice Department. The district court found that since there had been no claim of a violation of the screening procedures with respect to either Futterman or Schneiderman there was no actual ethical violation or harm to appellants. Finally, we were informed by Pressman during oral argument that Schneiderman is no longer associated with the Pressman firm. Thus, there is not a continuing Code violation with respect to Schneiderman.

We cannot lightly separate Sentry from the counsel of its choice. The Pressman firm has been engaged for over five years in the investigation and preparation of this lawsuit. We have been advised that disqualification of present counsel at this time would probably result in termination of the lawsuit favorable to the defendants. It would at least result in further harmful delay to all the parties and additional costs to Sentry.

"The district court bears the responsibility for the supervision of the members of its bar." *Fred Weber, Inc. v. Shell Oil Co., supra,* 566 F.2d at 605, *quoting from*

Unless I hear from you to the contrary, I will assume that the foregoing constitutes the basis upon which we may close this matter.
Sincerely yours,
SYDNEY BERDE

4. Counsel for Sentry stated in the brief and in oral argument that several other firms representing parties in this complex litigation had hired former government attorneys who were involved in the government milk cases and that these firms had adopted screening procedures similar to those used by the Pressman firm. The propriety of the conduct of these firms is not an issue on this appeal.

*Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975). As a general rule we encourage the district courts to strictly enforce the Code of Professional Responsibility. However, in the present case where the precise procedures used by the Pressman firm in screening both Futterman and Schneiderman had been approved by opposing counsel, there has been no allegation of actual impropriety, and the district court which has closely followed the course of this litigation for over five years found that disqualification would not be in the best interests of justice, we conclude that the district court did not abuse its discretion in denying appellants' motion to disqualify.

Although we have determined that disqualification was not required in this case, our opinion should not be construed as an approval of the practice involved in this case which necessitates a probe of the outer limits of what constitutes permissible professional conduct. If the motion to disqualify had been timely filed when Futterman first joined the Pressman firm, this court may have reached a different result.

Affirmed.