**JUAREZ GAS COMPANY, S. A.,**
Petitioner,

v.

**FEDERAL POWER COMMISSION,**
Respondent,

Southern Union Gas Company, Del Norte
Natural Gas Company, Intervenors.

No. 19973.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 25, 1966.

Decided Feb. 16, 1967.

------◆------

Mr. William J. Grove, Washington, D. C., with whom Mr. Philip R. Ehrenkranz, Washington, D. C., was on the brief, for petitioner.

Mr. Peter H. Schiff, Deputy Sol., F. P. C., with whom Messrs. Richard A. Solomon, Gen. Counsel, and Howard E. Wahrenbrock, Sol., F. P. C., were on the brief, for respondent.

Mr. George J. Meiburger, Washington, D. C., with whom Messrs. Charles E. McGee and John T. Ketcham, Washington, D. C., were on the brief, for intervenors.

Before Bazelon, Chief Judge, and Fahy and Robinson, Circuit Judges.

FAHY, Circuit Judge:

El Paso Natural Gas Company referred to as Gas Co., and El Paso Transportation Corporation, referred to as Transportation, filed with the Federal Power Commission, in Docket No. CP66–105, October 12, 1965, a joint application under Sections 7(b) and 7(c) of the Natural Gas Act,[1] for permission to enable Gas Co. to abandon the sale of natural gas to Southern Union Gas Company, referred to as Southern, and for a certificate of public convenience and necessity authorizing it to construct facilities to effect a sale of natural gas to Del Norte Natural Gas Company, referred to as Del Norte, and to deliver the gas to Transportation. Transportation requested permission to abandon its transportation of natural gas for Southern. It also sought a certificate of public convenience and necessity authorizing it to construct and operate facilities and to transport natural gas for Del Norte. On the same day, in Docket No. CP66–104, Del Norte applied pursuant to Section 3 of the Act for authority to export natural gas into Mexico to Gas Natural de Juarez, S. A., referred to as Gas Natural, and to Juarez Gas Company, S. A., our petitioner. Del Norte also, in Docket No. CP66–106, applied pursuant to Executive Order No. 10485 for a permit to operate, maintain and connect facilities at the International Boundary to effect the exportation referred to. Conformably with all the above, Southern, in Docket No. G–513, on October 12, 1965, applied for authority to rescind its permit to export natural gas to petitioner, a distributor of natural gas in Juarez, Mexico.

At the time of these several applications Gas Co. sold, and Transportation delivered, natural gas to Southern. Pursuant to contract Southern sold petitioner the natural gas petitioner distributed in Juarez. The effect of approval of the several applications would be for Gas Co. to sell to Del Norte, instead of to Southern; and Del Norte would supply both the Mexican distributors, petitioner and Gas Natural. Gas Natural was represented as a new company intending to distribute natural gas in the Juarez area where petitioner was then the sole local distributor.

The international facilities to enable these arangements to be carried out were to be constructed by Southern and leased to Del Norte. There was to be assigned to the latter, and it was to assume, Southern's contract rights with petitioner; Del Norte was to pay Southern under a formula agreed to, based upon volume and type of resale, with a guaranteed minimum annual charge. Petitioner promptly notified the Commission that the proposed transfer of its contract with Southern was "not agreeable."[2]

---

1. 52 Stat. 824, as amended, 15 U.S.C. §§ 717f(b), 717f(c).

2. On October 22, 1965, petitioner sent the Commission a telegram and a letter setting forth its position. It pointed out that the Presidential Permit and Commission's authorization which permitted the sale of gas by Southern to petitioner were not transferrable.

Prior to hearing by the Commission on the several applications petitioner duly filed a petition to intervene in each docket, opposing grant of the applications and advising the Commission it would participate in the proceedings to the end of showing that grant of the applications would not be consistent with the public interest nor required by the public convenience and necessity. Intervention by petitioner was denied.

In expedited proceedings the Commission issued two orders. One order granted Del Norte's application for authorization pursuant to Section 3 of the Act and for a permit pursuant to Executive Order No. 10485, and terminated the permit held by Southern. The effect of this was to authorize exportation of natural gas by Del Norte. The other order provided for issuance to Gas Co. and Transportation of a certificate of public convenience and necessity authorizing the construction and operation of facilities and the sale and transportation of natural gas as sought in their applications above referred to.

Petitioner, pursuant to Section 19 of the Act, applied for rehearing and stay, which were denied. It then filed its present petition in this court for review. It applied for a stay pending review, which we denied.

The only question we consider is whether petitioner was erroneously denied intervention. We think it was, for the reasons now set forth.

█ The several authorizations applied for and granted are interdependent. The proceedings involving each were relevant to the others. Apparently the basic objective of all was to enable Gas Co. and Transportation to construct and operate facilities, and to sell and transport nat-

ural gas to Gas Natural in Mexico, for local distribution in the Juarez area in competition there with petitioner.[3] It seems clear, therefore, that under our decision in Virginia Petroleum Jobbers Ass'n v. FPC, 104 U.S.App.D.C. 106, 259 F.2d 921, petitioner is a party aggrieved by grant of the authorization to supply Gas Natural, and thus was entitled to intervene in the proceedings referred to. In *Virginia Petroleum Jobbers,* Blue Ridge Gas Company had obtained certificates from state authorities, enabling it to extend its intra-state distribution of gas. It applied to the Federal Power Commission for an order directing an interstate pipeline, Atlantic Seaboard Corporation, to establish connections. The local jobbers petitioned to intervene, and the Commission denied the petition, stating "the question of local public interest has been resolved by local authorities." Though denying the jobbers a stay for lack of irreparable harm, this court found that they had demonstrated a probability of success on the issue of intervention:

> Should the Commission approve the Blue Ridge application, the product of petitioner's members will be in competition with natural gas introduced into a new market through interstate commerce. They will be directly competing for fuel revenues with both Blue Ridge and Atlantic, and thus would seem to have an undoubted right to intervene under the principles elaborated in City of Pittsburgh v. Federal Power Commission, 1956, 99 U.S.App. D.C. 113, 237 F.2d 741, and National Coal Association v. Federal Power Commission, 1951, 89 U.S.App.D.C. 135, 191 F.2d 462.

*Id.* at 111, 259 F.2d 926.

---

3. Moreover, the proceedings eventuated in authorization to Gas Co., as we have pointed out, to abandon sale of natural gas to Southern, who was supplying natural gas to petitioner under contract, and to permit Southern to rescind the authority under which it was doing this, resulting over-all in Gas Co. being authorized to sell to Del Norte instead of to Southern, with Del Norte supplying both peti-

tioner and its forthcoming competitor. One of the grounds upon which petitioner sought intervention was its interest in this proposed change in the arrangements for its own supply. Assuming that Southern's contract with petitioner was assignable, that does not answer petitioner's contention that it should be permitted to intervene in proceedings under the Act which might lead to such an assignment.

And see the Commission's own decision in Reynosa Pipe Line Co., 5 FPC 130, 132, considered in Cia Mexicana De Gas, S.A. v. FPC, 167 F.2d 804 (5th Cir.), cited with approval in National Coal Ass'n v. FPC, 89 U.S.App.D.C. 135, 138, 191 F.2d 462, 465, where we said: "We think it clear that any person who would be 'aggrieved' by the Commission's order, such as a competitor, is also a person who has a right to intervene."

■ We note that the order granting Del Norte's export authorization and terminating Southern's was conditioned upon Del Norte obtaining import auauthorization from the authorities of Mexico, and was without prejudice to any action taken by any such authority having jurisdiction. While these conditions no doubt were wise even if not essential, they do not deprive petitioner of intervention rights with respect to the proceedings leading to the authorization thus conditioned. For petitioner had an intervening interest in the subject matter of the Commission proceedings regardless of what the Mexican officials might authorize in Mexico.

In its petition to intervene petitioner alleged *inter alia* that Gas Natural was a newly created "paper company" having no experience in the distribution of natural gas, that there was no showing that Gas Natural would be able to dispose of the gas exported from the United States, and that Gas Natural would not be able to secure all the local, state, and federal authorization required by Mexican authorities.

The principal reason advanced by the Commission for denying intervention is stated in its decision as follows:

The Commission cannot assume the obligation of determining local franchise rights in Mexico. It is not the purpose of regulation under the Natural Gas Act to deal with franchise rights relating to the distribution of natural gas in foreign countries. In

fact, we have held that it is not within the Commission's province to determine which of two distributors in the United States has the legal right to distribute natural gas in a community within a state where the issue has been raised. We have left the resolution of such controversies to the appropriate authorities of the state where the parties operate. See American Louisiana Pipe Line Company, et al., Docket No. G–2306, et al. (28 FPC 41).[4]

■ We fully agree that it is for the authorities of Mexico, and not for the Commission, to determine what franchise rights are to be granted across the border. But it is for the Commission to determine what it should authorize on this side of the border, and this determination depends to some extent on the situation aross the border when the matter involves the exportation of gas. We do not have for decision the merits of the Commission's action, but only a question of the right of petitioner to participate as intervenor in the Commission's proceedings on the merits. And the fact that petitioner would be adversely affected only in its private interests by whatever action the Commission might take does not negative petitioner's standing to advance factors bearing upon the public convenience and necessity.

The jurisdiction of the authorities of Mexico over franchise rights in Juarez well might be an important factor for Commission consideration in deciding the issues, but is not a reason for excluding one in the situation of petitioner from being heard; for action by the authorities of Mexico does not control the Commission in the exercise of its own authority, or require the Commission to make the orders here involved. Therefore it cannot, as it were, delegate to those authorities the determination of petitioner's intervention right. Howsoever material the action of the Mexican authorities might be, there were matters of public interest and public convenience

4. The Commission further stated that "These are matters within the jurisdiction of the appropriate Mexican authori-

ties and this Commission will not review them."

and necessity to be decided by the Commission.

The cases cited by the Commission for a contrary view are not helpful on the present question. In Alston Coal Co. v. FPC, 137 F.2d 740 (10th Cir.), a rate investigation, the question was whether in fixing a gas rate the Commission was required to permit intervention to "competing companies selling other fuels in that territory." The court's answer in the negative was based on its conclusion "that the purpose of those provisions of the Act relating to rates and prices of gas were passed to protect the consuming public against exorbitant and excessive charges for gas," and

> the effect of a gas rate upon a competing fuel industry is not a factor which under the Act the Commission may consider in a proceeding for the establishment of a gas rate. It follows that petitioners did not have the right under the Act to intervene for the purpose of establishing the economic effect a reduction in gas rates would have upon the coal industry.

*Id.* at 741–742.

Neither Office of Communication of the United Church of Christ v. FCC, 123 U.S.App.D.C. 328, 339, 359 F.2d 994, 1005, nor Scenic Hudson Preservation Conference v. FPC, 354 F.2d 608, 617 (2d Cir.), cert. denied, Consolidated Edison Co. of New York v. Scenic Hudson Preservation Conference, 384 U.S. 941, 86 S.Ct. 1462, 16 L.Ed.2d 540, gives support to denial of intervention to petitioner in this case. Intervention was upheld in both cases.

■ Petitioner's operations were subject to competition by Gas Natural if the Commission issued its orders and Mexico issued Gas Natural a franchise. Under the Natural Gas Act determination whether the orders should issue required inquiry into matters of public interest and public convenience and necessity. Petitioner was entitled to present evidence in that regard. This entitlement does not attach because of the competitive situation, considered alone and in the abstract, but because an affected

competitor such as petitioner is deemed to be in position to advance matters which are relevant and material for consideration by the Commission under the standards of the Act.

A question remains as to the judgment the court should enter due to the error of the Commission in denying intervention to petitioner. That there must be a remand of the case to the Commission is certain. As to what else might be required, and what if anything our judgment should provide as to the nature and scope of the proceedings on remand, the parties are requested within ten days to advise the court of their views, with supporting memoranda if desired. The court in the meantime will withhold entry of its judgment. *Cf.* Bebchick v. Public Utilities Commission, 115 U.S.App.D.C. 216, 225, 318 F.2d 187, 196 (en banc), cert. denied, 373 U.S. 913, 83 S.Ct. 1304, 10 L.Ed.2d 414; English v. Cunningham, 106 U.S.App.D.C. 70, 85, 269 F.2d 517, 532, cert. denied, 361 U.S. 897, 80 S.Ct. 195, 4 L.Ed.2d 152.